■ MICHAEL GEORGIADIS, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 62523.) — Appeal from a judgment in favor of claimant, entered July 19, 1983, upon a decision of the Court of Claims (Murray, J.).

The issue presented on this appeal is whether the award of $75,000 in damages to claimant, whose arm was caught in a "bread proofing" machine causing multiple fractures, requiring several surgical procedures, and resulting in a permanently deformed left arm with limitation of motion of the left wrist and hand, is so inadequate as to be shocking to the conscience of the court. After taking into consideration the nature and extent of the injury, its permanence, the extent of pain, past, present and future, and the special damages, we conclude that the award is not so disproportionate to the injuries and special damages proved as to be unconscionable and beyond reasonable bounds (*Dufur v Lavin,* 101 AD2d 319; *Fitzgerald v Dinwiddie,* 99 AD2d 622). The judgment of the Court of Claims should be affirmed.

Claimant, a 32-year-old inmate of Eastern Correctional Facility, was operating a bread making machine in the prison on November 7, 1977 when a fingertip of his left hand became caught in the mechanism. His left arm was pulled into the machine before it could be shut off, causing him severe and permanent injuries to his left arm, wrist and hand.

At trial, claimant, through his medical expert Dr. Robert Tuby, a physician with orthopedic surgery experience, produced testimony establishing his injuries and their permanency. On the basis of his only examination of claimant on February 20, 1982 and his review of claimant's hospital records and reports, Dr. Tuby found that claimant sustained the following injuries at the time of the accident:

1. Comminuted fracture of the distal third of the shaft of the left radius.

2. Fracture of the distal end of the left ulna (fracture in the bone on the little finger side, the lower part of which was broken).

3. Cortical avulsion fracture of the distal phalanx of the left ring finger (chip was broken off the tip of the bone of the ring finger).

4. Deep laceration of the left hand.

5. Avulsion of the nail on the left ring finger (nail was torn off).

6. Abrasion and contusion of the left axilla-left tissue region (bruise of the armpit).

Claimant had several operations to repair the bone injuries. Dr. Tuby testified that he found that the fractures and the scars resulting from the surgeries were permanent. The doctor also found claimant's complaints of pain and stiffness with weakness of the left hand and forearm and pain in the left ring finger to be reasonable. Dr. Tuby stated that claimant had a gross deformity of the left forearm, that he held his left fingers in partial flexion and could not straighten out his left hand. He further found a marked reduction in grasping power of the left hand and limitation of flexion of the wrist, about 30% of dorsal-flexion and about 40% of palmer-flexion. The doctor stated that his physical findings were permanent.

Claimant testified that before the accident and his confinement, he was an apprentice tractor trailer driver and earned $20,000 in 1976. In December, 1976, he became a full driver and his weekly salary increased to $830 per week. He stated that he entered prison the third week of January, 1977. Claimant testified that from the time he was released from prison in June, 1979 until after his March, 1980 hospitalization, he did not seek employment. Subsequent to March, 1980, he went to his union which sent him to various jobs, but he failed each physical exam because he could not use his left hand. However, he also testified that in order to be a member of his union he had to pass a physical examination, and that in July, 1980, a doctor certified that he was capable of operating a tractor trailer. Claimant further said he had no trouble driving the tractor trailer but could not load or unload the cargo on trailers, which averaged 30,000 to 40,000 pounds of merchandise. Dr. Tuby testified that this unloading difficulty was reasonable.

Claimant purchased a tractor in July, 1980 and started his own business in August, 1980. He hired helpers to load and unload the cargo. He discontinued this business in September, 1982 because he said it was not profitable. Although he claimed

that he was looking for work at the time of the trial in January, 1983, he also stated that he made no attempts to be a tractor trailer operator from September to December, 1982 and that he did not seek employment in any capacity other than as a truck driver. Claimant further stated that since September, 1982, he was "trying to sell my truck and possibly go into another business". Claimant paid no medical expenses for care and treatment while he was an inmate. However, he was billed $1,823.19 for his last stay in the hospital in March, 1980, after his release.

The trial court noted in its decision the severity of claimant's injury, the several operations and casts, and hospitalizations for two to three weeks at a time. However, the court stated it was "not impressed with claimant's candor with respect to his preincarceration employment". Nor was the court impressed with claimant's attempt to be gainfully employed after his release from incarceration. The trial court also found claimant's disability to be permanent and that he has suffered and will continue to suffer some pain in his left hand and arm. It awarded him $75,000 for all damages, past, present and future.

Since this is a nonjury case, our inquiry is not limited to whether the findings were supported by some credible evidence. It is within the province of this court to grant the judgment which, upon the evidence, should have been granted by the trial court (*Koester v State of New York,* 90 AD2d 357, 363-364; see, also, *Larkin v State of New York,* 84 AD2d 438).

On the facts before the Court of Claims, we are unable to say that the instant award is inadequate. The judgment rendered is supported by the credible evidence. The only medical special damages proved was the $1,823.19 bill for claimant's March, 1980 hospitalization. His proof of loss of income consisted only of his testimony and lacked employment records or documentation. There were discrepancies in his testimony relating to his attempt to find gainful employment after his release from prison. It appears that claimant made only a limited job search. The evidence concerning loss of income presented a question of credibility for the trial court to resolve, and on this record the Court of Claims properly rejected much of claimant's proof as to loss of income.

On the issue of pain, suffering and permanency resulting from the injury, the evidence raised some question as to the degree of pain and the extent of the disability. Dr. Tuby admitted that the grasping test he administered to claimant was subjective in that it was within claimant's control how much pressure he exerted

during the test. There was some proof that claimant was right-handed, while claimant testified that he was left-handed and only wrote right-handed. There was also evidence that claimant believed his hand injury was worse than it actually was and, as a result, hesitated to use his hand.

In our opinion, the Court of Claims properly considered claimant's deformity, his pain and suffering, his disability and its permanent and restrictive nature in computing the amount awarded. We see no reason to substitute our judgment for that of the trier of the facts in these circumstances.

Judgment affirmed, without costs. Mahoney, P. J., Kane, Main, Mikoll and Levine, JJ., concur.