■ EUGENE B. ARNOLD et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 65597.) — Harvey, J. Appeal from a judgment of the Court of Claims (Murray, J.), entered February 27, 1984, which dismissed the claim.

Shortly before noon on May 15, 1981, a group of people, including a humane society law enforcement officer, the town dog warden, a veterinarian and a State trooper, arrived at claimant's home to inspect his animals. Claimant refused the inspection, making it clear that he would only permit such an inspection if he were served with a warrant. Later that afternoon, State Troopers Michael Wright and Paul La Point went to claimant's residence, knocked on the door and, when claimant came out of the house and stood on the porch with the troopers,

one of the troopers explained that he had a warrant for claimant's arrest for a violation of Agriculture and Markets Law § 353. After a short exchange of conversation, claimant announced either that he was not going anyplace with the troopers or that he was not going anyplace without his shirt. The actual words he used are in controversy. When claimant turned around to reenter his house, one trooper attempted to restrain him by locking his arm around claimant's neck. When claimant resisted that effort, the other trooper joined in the scuffle and then forced claimant to the floor and placed him in handcuffs. Claimant commenced this action seeking damages for personal injuries resulting from the incident, largely the aggravation of prior injuries.

At the time of the incident, claimant was still partially disabled from the effects of an accident for which he had received a considerable amount of medical treatment and hospitalization. This fact was unknown to the troopers at the time. Claimant was not using crutches or a cane when he appeared on the porch, nor was there any other indication of any disability. He was larger than either of the troopers, being six feet tall and weighing 210 pounds.

Prior to going to the premises, the troopers were advised of an observation made by those members of the original visiting group who had remained in the vicinity of claimant's small farm. Claimant was observed pacing back and forth carrying two rifles.

This claim for money damages is based upon claimant's contention that the troopers used unreasonable force in making the arrest. He claims that he never threatened the safety of the troopers, nor did he intend to do anything other than to return to the inside of his house and put on a shirt. The State contends that no more than reasonable force was used to overcome claimant's efforts to resist arrest. The troopers had been apprehensive of misconduct on the part of claimant because of the information they had received concerning claimant's carrying of firearms. They point out that they used no weapons of any nature nor did they strike claimant in any manner, but only used such physical force as they deemed necessary to prevent claimant from reentering his house. The Court of Claims dismissed the claim after trial. It addressed the issue of reasonable force and found, as fact, that the troopers used no more than reasonable force in making the arrest (see, Penal Law § 35.30 [1]). The evidence created an issue of fact which the trial court decided in favor of the State.

Since this case was tried before a court without a jury, the scope of review is not limited to whether the verdict is against the weight of the evidence, but this court may weigh the relative probative force of conflicting inferences that may be drawn from the testimony (*People ex rel. MacCracken v Miller,* 291 NY 55, 62; *Georgiadis v State of New York,* 106 AD2d 706; *Koester v State of New York,* 90 AD2d 357, 363-364; *Brooks v New York State Thruway Auth.,* 73 AD2d 767, 768, *affd* 51 NY2d 892) and grant the judgment which upon the evidence should have been granted by the trial court (*Larkin v State of New York,* 84 AD2d 438, 444; *Shipman v Words of Power Missionary Enters.,* 54 AD2d 1052, 1053). Of course, even in a nonjury case, due regard must be given to the decision of the Trial Judge who was in a position to assess the evidence and the credibility of witnesses (*see, Huertas v State of New York,* 84 AD2d 650, 651).

We conclude that, upon weighing the evidence, the determination of the trial court should not be disturbed. The troopers knew that claimant possessed firearms which he had openly brandished earlier in the day. Before endeavoring to reenter the house, he did not seek permission to do so. On the contrary, he indicated that he was going to do exactly that which he wanted to do. He was a big man. The only restraint was in the nature of wrestling with him, an effort which, had it not been for claimant's underlying disability, would not have produced an injury of any consequence. There was no evidence that the troopers were overly aggressive or threatening at any time during the arrest or that they provoked any misbehavior on the part of claimant.

We have examined the cases cited by claimant and have concluded that no legal basis exists which would warrant reversal.

Judgment affirmed, with costs. Kane, Casey and Harvey, JJ., concur.

Mahoney, P. J., and Levine, J., dissent and vote to reverse in the following memorandum by Mahoney, P. J. Mahoney, P. J. (dissenting). A municipality may be held liable under a theory of battery where a police officer in its employ uses excessive force in effectuating an arrest (*Jones v State of New York,* 33 NY2d 275, 279-280; *Stein v State of New York,* 53 AD2d 988; *Hinton v City of New York,* 13 AD2d 475). The evidence introduced at trial in the instant case clearly establishes that excessive and unreasonable force was used against claimant. Therefore, the judgment of the Court of Claims dismissing the claim should be reversed as a matter of law.

Whether the force used was excessive is, of course, dependent on the circumstances. At the time of the incident, claimant had complied with the troopers' request that he step out of his house onto the porch. He was wearing jeans and shoes and had no shirt on. He was not armed and his hands were empty. The troopers testified that there were no weapons within claimant's reach and that they did not feel in danger. They also testified that claimant did not use abusive language toward them. It must be kept in mind that the crime for which claimant was being arrested was nonviolent and relatively minor (failure to provide sustenance to animals is a misdemeanor [Agriculture and Markets Law § 353]).* Moreover, except for a prior disorderly conduct conviction, claimant did not have a criminal record. Thus, the troopers were not in the position of trying to arrest a dangerous felon for a serious offense.

Claimant testified that, after the troopers told him that they were going to arrest him, he replied, "I'm not going anywhere without a shirt." The troopers testified that he said, "I'm not going anywhere." This is the only major discrepancy in the testimony. Claimant then tuned to go back into his house. The troopers then grabbed claimant from behind, one by claimant's neck and the other around his stomach, and wrestled him to the porch floor. The evidence indicates that the troopers had not ordered claimant not to move, nor did they give any warning before they tackled him. The troopers admitted that claimant did not swing at them or kick them, but testified that he offered "resistance" as they forced him to the floor. While the parties dispute how much force was used in the tackle, there is no dispute over the result of the tackle. Claimant's uncontradicted testimony indicated that his head struck the porch door, breaking the plexiglass window frame. The force used by the trooper who grabbed claimant around the waist was sufficient to cause him to soil his pants. Most important, the tackle caused serious damage to claimant's knee. While it is true that claimant has a preexisting knee condition, the injury caused by the troopers was serious enough to require immediate surgery. All of this evidence in the record is inconsistent with the majority's conclusion that "The only restraint was in the nature of wrestling with him, an effort which, had it not been for claimant's underlying disability, would not have produced an injury of any consequence."

---

*   We note that the misdemeanor information upon which the arrest warrant was based is patently insufficient to support a conviction of this crime. While this fact does not bear on the propriety of the troopers' conduct, since they acted pursuant to a presumably lawful arrest warrant, it adds to the questionable nature of this entire episode.

We also note that there is no admissible evidence in the record that claimant was carrying any weapons during the earlier visit to claimant's farm by a different State trooper and other local officials. One of the troopers who was involved in the scuffle with claimant testified that the trooper who had earlier gone to claimant's farm saw claimant carrying two rifles. This testimony was properly objected to as hearsay. The Court of Claims allowed the testimony, not as evidence that claimant had been carrying the rifles, but as evidence of the troopers' state of mind when going to effectuate the arrest. While such state of mind may well have been relevant as the troopers approached claimant's home, it became irrelevant once he appeared on the porch and was clearly unarmed. Beyond the legal limitations of this testimony, it is of questionable credibility. Had claimant actually been carrying rifles earlier that day, the State could have produced as witnesses the trooper who allegedly so informed the arresting troopers along with the local officials who were also then present.

In conclusion, it is apparent from the record that, considering the circumstances as well as the less drastic means by which claimant could have been prevented from reentering his house, the force employed was excessive.