■ ALLENE R. VAN SON, as Administratrix of the Estate of SUSAN E. VAN SON, Deceased, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 60503.)—Judgment unani-

mously reversed, on the law, with costs, judgment granted claimant on issue of liability and matter remitted to the Court of Claims for a determination of damages. Memorandum: Claimant, administratrix of the estate of Susan Van Son, appeals from a judgment dismissing her claim for wrongful death. The decedent drowned as a result of a one-car accident on February 2, 1976 when the car in which she was riding as a passenger went off the Inner Loop Bridge in Rochester, broke through the bridge guardrail and plunged into the Genesee River. The claim is predicated upon the "State's alleged negligence "in failing to provide said bridge with suitable railings and supports." The trial court dismissed the claim, reasoning the evidence did not establish that the State caused the car to strike the bridge railing, or that the State negligently constructed the railing. We disagree.

The State has a duty to construct and maintain safe guardrails *(see, Gutelle v City of New York,* 55 NY2d 794; *Lattanzi v State of New York,* 74 AD2d 378, 379, *affd* 53 NY2d 1045). The State may be held liable when a guardrail is known to be hazardous *(Zalewski v State of New York,* 53 AD2d 781), or when a guardrail is improperly maintained and is allowed to remain in a defective and unsafe condition *(Matter of Kirisits v State of New York,* 107 AD2d 156; *Hall v State of New York,* 28 AD2d 1203). In sum, the State is obligated to provide barriers of sufficient strength to hold an automobile traveling at a reasonable rate of speed at points of particular danger along its highways and bridges *(Zalewski v State of New York,* 53 AD2d 781, 782, *supra; Brady v City of New York,* 39 AD2d 600).

The record reveals that on the day of the accident it was snowing, blowing and icy and a police officer who investigated the accident stated that the driving conditions were bad. The accident site was described as a "weaving section" requiring traffic approaching the bridge to change lanes. As the car in which decedent was riding passed another car on the bridge, it left the road for no apparent reason other than the weather conditions and while traveling between 10 and 15 miles per hour, struck the bridge railing at a slight angle. The bridge railing was built in 1962 and consisted of a 13-foot panel described as a four-rail design made of extruded aluminum and secured to bridge posts made of cast aluminum. A senior civil engineer employed by the State acknowledged that the cast aluminum posts exhibited a "brittle fracture characteristic" and would break easily upon impact. Claimant's expert examined the bridge railing at the accident site and concluded

that the cast aluminum posts were brittle and unsuitable and that prior to the accident it was widely known in the engineering community that aluminum bridge rails were dangerous. He stated that as early as 1963 the State was aware of various remedies such as using sleeves over the rails, threading cable through the rails and anchoring the ends. Indeed, in a 1964 memorandum, a State engineer directed all district engineers to be aware that aluminum railings may provide inadequate protection when subject to moderate impact. Most notable in the record is a 1966 letter from the State's chief engineer in which he refers to an aluminum bridge railing as follows: "Here is an appurtenance that has been amply proved to be a deadly thing when hit. It shrapnelizes and endangers people and vehicles on the road that is overpassed * * * It is our considered judgment, based on the experience and observation of several cases where these rails have been hit, that they are a deadly contributing factor to fatal accidents. They fail to contain the car impacting them, and they endanger other vehicles with flying fragments."

The State argues that because the bridge was constructed in accordance with good engineering practice and in conformity with State and Federal standards existing at the time, the correctness of the construction of the bridge railings is not subject to review *(Weiss v Fote,* 7 NY2d 579). The Appellate Division, Third Department, rejected the identical argument and held as follows: "[t]he immunity from review established by *Weiss (supra)* does not apply, however, where it can be shown that the plans of the bridge were approved without adequate prior study or lacked a reasonable basis and that subsequent events demonstrated the existence of a dangerous condition known by the State" *(Zalewski v State of New York, supra,* p 782). Although the testimony established that the bridge rail conformed to State and Federal standards when it was built in 1962, the record also reveals that these standards had changed prior to the accident and that continuous steel railing was recommended. Most important, the record indicates that the State failed to conduct any testing prior to adopting the standards for aluminum rails. Had it done so it would have found that the bridge rails were inadequate when they were installed. The fact that the State knew of the brittle fracture characteristics of aluminum bridge rails indicates that there could not have been a reasonable basis for the State's decision to use them on the Inner Loop Bridge.

On this record, and even without regard to the relaxed standard of proof in a wrongful death action *(see, Noseworthy*

*v City of New York,* 298 NY 76), we conclude that the evidence is sufficient to establish, as a matter of law, that the State was negligent, that its negligence was the proximate cause of decedent's injury and that decedent was not contributorily negligent. The State failed to exercise due care because knowing the bridge would carry vehicular traffic, its decision to use brittle aluminum railings without adequate prior study lacked a reasonable basis *(Zalewski v State of New York, supra; see also, Matter of Kirisits v State of New York,* 107 AD2d 156, 159-160, *supra; Lattanzi v State of New York, supra; Hall v State of New York, supra).* Accordingly, judgment should be granted for claimant on the issue of liability and the matter remitted to the trial court for a determination of damages. (Appeal from judgment of Court of Claims, Quigley, J.—negligence.) Present—Dillon, P. J., Denman, Green, O'Donnell and Schnepp, JJ.