■ JUDITH CORDTS, Individually and as Administratrix of the Estate of WILLIAM CORDTS, Deceased, Respondent, v STATE OF NEW YORK, Appellant.—Main, J. Appeal from a judgment in favor of claimant, entered November 7, 1985, upon a decision of the Court of Claims (Benza, J.).

At about 6:30 A.M. on November 27, 1981, decedent, William

coincident with the knowledge relied on by the State of New York in this lawsuit?

"A. Yes."

Cordts, was driving his automobile in a generally westerly direction on State Highway Route 55 in the Town of Wawarsing, Ulster County. A mixture of sleet and rain was falling and the pavement was wet but unfrozen. As he crossed the Honk Lake bridge, the surface of which was ice covered, his vehicle went into a spin. The vehicle, still spinning, continued down the highway for some distance until it crossed over to the south side of the highway where, according to the State's accident reconstruction expert, the rear end of the vehicle came in contact with a guide rail and the support posts of a traffic sign which were implanted immediately adjacent to the guide rail wires. At impact, the car spun in the opposite direction and, when the side of the car struck the guide rail, the vehicle rolled over the guide rail and down an embankment where it finally came to rest. Shortly thereafter, decedent was found face downward under the car's rear axle. He never regained consciousness and died at the scene. There were no eyewitnesses to the accident and much of the evidence concerning its happening came from accident reconstruction experts.

Claimant commenced this action alleging that the State was negligent in allowing the guide rails along the highway to remain in a state of disrepair through lack of maintenance, thus becoming defective, and in permitting the highway to remain ice covered for an extended period of time. Claimant further contended that the State knew or should have known of the dangerous condition and failed to correct it or warn the traveling public of the condition. After a trial, the Court of Claims, apparently crediting the testimony of the State's reconstruction expert, determined that the proximate cause of the accident was not the deteriorated condition of the guide rails, but rather was the positioning of the support posts for the traffic sign at a place so close to the guide rail as to prevent it from performing its intended function of deflecting a vehicle, thereby preventing the vehicle from leaving the highway. It was the court's conclusion that the force of the contact of the vehicle with the sign support posts caused the vehicle to pivot in the opposite direction and roll over the guide rail and down the embankment. The only evidence as to the speed of the vehicle indicated it to be well within the permissible limit, and the court found decedent free of any negligence. At the time of his death, decedent was 29 years old and left surviving his wife, age 28, three sons ages eight, seven and three and a daughter one month old. The Court of Claims awarded claimant the sum of $1,217,206.07 in damages.

On appeal, the State maintains that it may not be held liable since the sign supports were erected by the State in conformity with contemporaneous design standards and were not known by the State to constitute a danger to users of the highway. Further, the State contends that the damages should have been mitigated because of decedent's failure to use an available and operable seat belt.

We consider first the State's assertion that, since the placement of the sign posts was a planning decision, no liability may attach. It is long and well established that while certainly not an insurer of the safety of travelers on its roadways, the State owes to the traveling public the nondelegable duty of keeping its highways in a reasonably safe condition *(Friedman v State of New York,* 67 NY2d 271, 283). While governmental liability for highway injuries is somewhat limited by *Weiss v Fote* (7 NY2d 579), that case provides that liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis *(id.,* p 589). It is this limitation upon which the State relies, and mistakenly so, we conclude.

The only testimony as to the location of the sign supports was to the effect that their placement was in accordance with the State standards existing in the 1970s. The substance of those standards was not revealed. Such a bald assertion provides no magic cloak of immunity *(cf. Cordero v City of New York,* 112 AD2d 914, 915). Moreover, the placement of the sign supports had no reasonable basis. It is obvious, even without expert assistance, that the placement of the supports effectively thwarted the function of the guide rails, i.e., to deflect a vehicle coming in contact with them back upon the roadway. Hence, it appears from the record that the plan was evoked without adequate study and also lacked a reasonable basis, thus providing a predicate for a finding of liability *(see, Weiss v Fote, supra,* p 589; *see also, Alexander v Eldred,* 63 NY2d 460; *Cordero v City of New York, supra).* We find the State's claim that it had no notice or knowledge of the condition equally unavailing inasmuch as the State's affirmative act created the hazardous condition *(see, Muszynski v City of Buffalo,* 29 NY2d 810, *affg on opn below* 33 AD2d 648; *Matter of Rouse v State of New York,* 97 AD2d 962).

Turning our attention to the State's final contention that the Court of Claims erred in failing to mitigate claimant's damages upon the basis of decedent's nonuse of an available and operational seat belt, we first note that the State bears

the burden of pleading and proving that the nonuse thereof by decedent resulted in increasing the extent of his injuries and damages. Nonuse of an available seat belt, and expert testimony in regard thereto, is a factor which the trier of the fact may consider, in the light of all other factors received in evidence, in arriving at the determination as to whether a party has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain *(see, Spier v Barker,* 35 NY2d 444).

The autopsy revealed that the cause of decedent's death was "[c]ompression, neck, with: hemorrhage thyroid, hemorrhage larynx, cyanosis and petachiae, head, neck and upper chest. Pulmonary edema and congestion". The State's expert, a former employee of the Department of Motor Vehicles, opined that decedent was ejected through the right passenger window by the centrifugal force of the car's rolling motion, but that his contact with the door and window did not produce the related injury. The expert thus inferred that the fatal injury occurred after decedent was thrown from the vehicle. He further testified that decedent's injuries would not have been as severe had he been wearing a seat belt. Upon cross-examination, however, he could not remember whether he noted any deformities in the vehicle's interior structure which might have indicated contact with decedent's head, other than to the right-hand door. Dr. Thomas Oram, the chief of pathology at Ellis Hospital, testified that the injuries listed in the autopsy report were caused by decedent's head, neck and upper torso coming in contact with the structure of the vehicle. It is fair to say that the testimony on this subject was not only in conflict but was somewhat unclear and confusing, and we cannot say that the Court of Claims conclusion that there was insufficient proof of a causal connection between decedent's nonuse of the seat belt and the injuries causing his death was erroneous.

Inasmuch as this case was tried before a court without a jury, our scope of review is not limited to whether the verdict is against the weight of the evidence, but this court may weigh the relative probative force of conflicting inferences that may be drawn from the testimony *(People ex rel. Mac-Cracken v Miller,* 291 NY 55, 62; *Koester v State of New York,* 90 AD2d 357, 363-364; *Brooks v New York State Thruway Auth.,* 73 AD2d 767, 768, *affd* 51 NY2d 892)* and grant the judgment which, upon the evidence, should have been granted by the trial court *(Larkin v State of New York,* 84 AD2d 438, 444; *Shipman v Words of Power Missionary Enters.,* 54 AD2d

1052, 1053). At the same time, due deference must be given to the decision of the Trial Judge, who was in a better position to assess the evidence and the credibility of the witnesses (*cf. Arnold v State of New York,* 108 AD2d 1021, *appeal dismissed* 65 NY2d 723; *Huertas v State of New York,* 84 AD2d 650).

Applying these principles and considering this record in its entirety, we find no valid reason to disturb the Court of Claims determination that the State's negligence was the proximate cause of the accident and that the State failed to sustain its burden of demonstrating that there was a causal connection between decedent's nonuse of a seat belt and his injuries.

Judgment affirmed, with costs. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.