Eva M. Kissinger, Appellant, v State of New York, Respondent. (Claim No. 1.)

Jane F. Kissinger, Appellant, v State of New York, Respondent. (Claim No. 2.)

Third Department, March 12, 1987

### APPEARANCES OF COUNSEL

*Caputo, Aulisi & Skoda* by *Charles P. Caputo (Robert M. Cohen* of counsel), for appellants.

*Robert Abrams, Attorney-General (Dennis Hurley* and *Peter J. Dooley* of counsel), for respondent.

### OPINION OF THE COURT

WEISS, J.

These claims were commenced to recover damages for personal injuries to claimant Jane F. Kissinger (hereinafter Kissinger) and for property damage to the automobile owned by her mother, claimant Eva M. Kissinger, as the result of a one-car accident on October 30, 1981. At approximately 5:00 A.M., while driving in the southbound lane of Route 30A in the Town of Mohawk, Montgomery County, Kissinger fell asleep at the wheel, left the road and struck a house owned by Barbara Ann Telfar. Claimants both predicate liability upon the State's alleged negligence in failing to design, construct and maintain Route 30A in a reasonably safe condition, more particularly, in failing to install and maintain a guardrail in

the area where the car Kissinger was driving left the roadway. In dismissing both claims, which had been consolidated for a bifurcated trial solely upon the issue of liability, the Court of Claims held that the State's decision not to replace a guardrail at the site of the accident was a planning decision immune from liability pursuant to *Weiss v Fote* (7 NY2d 579). Claimants have appealed.

■ It is well established that the State is required to maintain its roads and highways in a reasonably safe condition *(see, Matter of Friedman v State of New York,* 67 NY2d 271, 283; *Tomassi v Town of Union,* 46 NY2d 91, 97). This duty extends to the furnishing of safe guardrails *(see, Lattanzi v State of New York,* 53 NY2d 1045, *affg* 74 AD2d 378; *Van Son v State of New York,* 116 AD2d 1013, 1014; *Matter of Kirisits v State of New York,* 107 AD2d 156, 158-159). The State, however, is not an insurer and pursuant to the qualified immunity doctrine set forth in the seminal *Weiss* case, "liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis" *(Weiss v Fote, supra,* at 589; *see, Cordts v State of New York,* 125 AD2d 746; *Schwartz v New York State Thruway Auth.,* 95 AD2d 928, 929, *affd* 61 NY2d 955). Claimants maintain that the Court of Claims erred in affording the State immunity under this standard. We disagree.

■ In so deciding, we first observe that where, as here, a case is tried without a jury, our power of review is not limited to whether the trial court's findings of fact are supported by some credible evidence; this court may instead grant the judgment warranted by a reasonable assessment of the evidence, giving due consideration to the trial court's advantage of seeing and hearing the witnesses first hand *(see, Cordts v State of New York, supra; Arnold v State of New York,* 108 AD2d 1021, 1023, *appeal dismissed* 65 NY2d 723).

In 1976, a regional office of the Department of Transportation (hereinafter DOT) initiated a request to improve Route 30A in the immediate vicinity of the Telfar residence by adding a truck-climbing lane on the northbound portion of the highway and flattening out the curve (which turned to the left for southbound traffic). A period of review ensued between DOT's regional office, DOT and the Federal Highway Administration (hereinafter FHWA), and design approval for the project was granted in September 1978. Construction took

place in 1980, at which time an existing guardrail along the southbound lane, which ran northerly for 131 feet from a point approximately 133 feet north of the Telfar residence, was removed but not replaced. It is at that location that claimants assert that Kissinger failed to negotiate the turn to the left and proceeded straight off the road into the Telfar home, sustaining serious personal injuries. Claimants maintain that Kissinger would not have been injured, or at least her injuries would have been minimized, but for the negligent failure of the State to replace the guardrail at this site. To support this theory, claimants produced testimony that the car left the highway at a point 255 feet north of the Telfar residence. Further, claimants' expert testified that if a guardrail had been in place, the car would have impacted the rail at a 5- to 10-degree angle, and been redirected along the path of the rail. In contrast, one of the State's experts opined that the car would not have intersected the guardrail even if one had been installed.

 Contrary to the findings of the Court of Claims, claimants maintain that there is no evidence that either DOT or FHWA ever reviewed the decision to remove and not replace this guardrail, and in any event, the failure to replace the guardrail was in contravention of the State's own safety standards. We disagree. Upon reviewing this record, there is little question that the instant project to reconstruct Route 30A was the subject of extensive and time-consuming review on the part of DOT's regional office, DOT and FHWA. Although the State's two witnesses at trial were unfamiliar with the design process involved in this project, a history was provided through the deposition testimony of Edward Schmidt, a civil engineer employed by DOT's preliminary planning review bureau, who participated in the design review of the instant project.[1] In the end, three separate design reports were prepared before FHWA issued its project approval.

It is not the function of this court to substitute our views for that of the governing municipality where a reasoned study is demonstrated (see, Muller v State of New York, 108 AD2d 181, 188-189, revd on other grounds 67 NY2d 271). A careful review of the testimony and documentation prepared by DOT's re-

---

1. At the apparent direction of the Court of Claims, this deposition was actually held some nine months after the trial testimony was taken. It further appears that the court admitted Schmidt's "examination before trial" into evidence over claimants' objection, along with all the exhibits documenting the project history.

gional office, DOT and FHWA confirms that an adequate study of the project, including the placement of guardrails, was made. The project initiation request states that the project would "replace or install guide rail *as required*" (emphasis supplied) and "guide railing would be brought to standard". Each of the design reports lists as a goal the improvement of "guide rail protection by replacing inadequate sections and adding new portions of guide rail *where needed*" (emphasis supplied), and also state that "guide railing will be updated". The final plans chart the removal and installation of guardrails. One of the primary purposes of this project was to improve the substandard geometrics on the curve in question. The horizontal curvature was changed from 11 to 6 degrees, and the radius increased from 575 feet to 955 feet. Schmidt explained that this improvement flattened the curve near the house, decreasing the probability of cars going off the highway. Moreover, Robert Peruzzi, the assistant project engineer, explained that the purpose of the guardrail prior to its removal from this turn was to provide protection from a pond alongside the highway. In the reconstruction, the pond was filled in and the cross slope considerably flattened. With these improvements, Peruzzi testified that the guardrail was no longer necessary and thus was not replaced. These circumstances prevailing, a predicate for liability against the State for inadequate study was not established.

■■ Nor can we agree with claimants' assertion that the State's failure to replace the guardrail in question was inherently unreasonable. This issue centers on the proximity of the Telfar residence to Route 30A. The Court of Claims determined that the northeast corner of the house was set back 29 feet from the southbound lane, and the southeast corner was set back 25.75 feet. Claimants maintain that this setback was insufficient since chapter 10.00 of the State's highway design manual requires the placement of a guardrail where a dangerous fixed object (the Telfar house) is situated within 30 feet of the road.[2] Thus, claimants urge that the State violated its own standards in failing to provide an adequate clear zone between the house and the highway *(see, Merrill Transp. Co. v State of New York,* 97 AD2d 921, 922; *cf., Boyd v State of New York,* 103 AD2d 882, 883). The State counters that chapter 10.00

---

2. Claimants produced further evidence that the 30-foot clearance area related to straight highways *(see, Boyd v State of New York,* 103 AD2d 882) and that the American Association of State Highway and Transportation guidelines call for a 71-foot clearance zone on a curve of the type in dispute.

applies only with respect to new construction and not for a minor reconstruction project such as the one at hand. Relying on paragraph 7.03.01 of chapter 7.00 of the manual, the State contends that the 30-foot clearance area served merely as a guideline. However, in accepting the State's position, the Court of Claims erroneously relied on chapter 7.00 of the manual which was never introduced into evidence *(see, Matter of Simpson v Wolansky,* 38 NY2d 391, 396; *Toll v State of New York,* 32 AD2d 47, 50-51). This is particularly true since the State's own witness, Robert Radliff, the director of the preliminary planning review board of DOT, testified that chapter 7.00 did not apply to this Federally funded project. Nor do we agree that the manual is a public record subject to judicial notice *(see,* CPLR 4511). The question remains, however, whether the failure to replace the old guardrail was a reasonable decision.

■ By its own terms, chapter 10.00 of the manual is to be applied to the "fullest extent possible" in urban and suburban areas. Schmidt testified that the clear zone requirements set forth in the design manual were not mandatory on this project, since this was neither new construction nor major reconstruction. He explained that the placement of a guardrail is a matter of engineering judgment. Factors considered include the accident history of a location and, in this instance, a comparison of the degree of hazard posed by the Telfar house versus a guardrail, which in itself poses a roadside hazard. Pertinent here is a July 3, 1978 memorandum from DOT's regional design engineer, P. A. Barnes, to Schmidt, that due to the low concentration of accidents on the subject highway, there was no need for "any special mitigative measures at any particular location". Considering the improvements made on this curve and the minimal accident history, we cannot say that the State's planning decision not to replace the guardrail was inherently unreasonable. Accordingly, the Court of Claims properly dismissed the claims *(see, Chionchio v New York State Thruway Auth.,* 112 AD2d 610; *Boyd v State of New York,* 103 AD2d 882, 883, *supra; Schwartz v New York State Thruway Auth.,* 95 AD2d 928, *supra).*

CASEY, J. P., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgments affirmed, without costs.