■ JOHN MARREN, as Administrator of the Estate of ELIZABETH MARREN, Deceased, Appellant, v STATE OF NEW YORK, Respondent.—In a negligence claim to recover damages for personal injuries and wrongful death, the claimant appeals from a judgment of the Court of Claims (McCabe, J.), dated April 1, 1986, which, after a nonjury trial, is in favor of the State and against the claimant, dismissing the claim.

Ordered that the judgment is reversed, on the law and the facts, with costs, the State is adjudged to be 35% at fault in the happening of the accident, the decedent is adjudged to be 65% at fault in the happening of the accident, and the matter is remitted to the Court of Claims for a trial on the issue of damages.

The instant action arises out of a two-vehicle accident at the intersection of Route 22 and Putnam Lake Road in Putnam County, New York, on February 16, 1983, at approximately 8:25 A.M. The decedent, Elizabeth Marren, proceeded west on Putnam Lake Road to the intersection of Route 22 where she made a complete stop prior to attempting to make a left turn into the southbound lane of the roadway. As she entered the intersection, her vehicle was struck by a vehicle traveling northbound on Route 22. She later died as a result of injuries sustained in the accident.

Thereafter, the claimant, John Marren, as administrator of the decedent's estate, commenced this action in the Court of Claims seeking money damages for wrongful death and conscious pain and suffering, claiming that the accident and subsequent death of Elizabeth Marren was in part a result of the failure of the State of New York to place adequate traffic control devices at the intersection where the collision had occurred.

This action had its genesis in the proposed relocation of the intersection of Route 22 and Putnam Lake Road in order, inter alia, to accommodate a commercial development which was to be constructed alongside Route 22. At trial, the claimant established that prior to the relocation of the intersection, the New York State Department of Transportation (hereinafter the DOT) had determined, after a study of the proposed site, that it should not be opened to the public until a traffic signal light was installed at the location. Later, this determination was made an express condition upon which the DOT

issued the highway work permit to relocate the intersection. In January 1982 after the project had been nearly completed, a meeting was held between representatives of the DOT and the developer where it was agreed that the DOT would release the developer from the responsibility of installing the traffic signal at the intersection. The DOT further determined that it would postpone the installation of a traffic signal light until another project relating to the improvement of Route 22 was completed. As a temporary measure, stop signs were installed on the northeast and southeast corners of the intersection to stop traffic proceeding west on Putnam Lake Road. However, no traffic devices were installed on Route 22 at the intersection to limit the flow of traffic on that road. It was not until November 29, 1983 that a traffic signal light was made operational at the new intersection.

At the conclusion of the trial, the court dismissed the claim, finding that the accident was the result of driver negligence or some other cause for which the State was not liable. The court deemed it unnecessary to reach the issue of whether a traffic signal had been initially ordered and thereafter not installed in violation of the DOT's own mandate. Based upon the relative probative force of the conflicting inferences which may be drawn from the testimony, we conclude that the court erred in determining that the State's negligence was not a proximate cause of the accident.

In *Superb Health Foods Corp. v Marino* (138 AD2d 366, 368), this court stated: "On an appeal from a nonjury determination, our scope of review is as broad as that of the Trial Judge *(Majauskas v Majauskas,* 61 NY2d 481, 493-494; *Northern Westchester Professional Park Assocs. v Town of Bedford,* 60 NY2d 492, 499; *Broida v Bancroft,* 103 AD2d 88; 7 Weinstein-Korn-Miller, NY Civ Prac ¶ 5501.22). While findings by a court without a jury are not lightly set aside in a nonjury case, ' "this court's inquiry is not limited to whether the findings were supported by some credible evidence. If it appears on all the credible evidence that a different finding * * * is not unreasonable, then this court must weigh the relative * * * force of conflicting testimony" ' *(Koester v State of New York,* 90 AD2d 357, 363-364, quoting from *Shipman v Words of Power Missionary Enters.,* 54 AD2d 1052, 1053; *see also, D'Arienzo v Manderville,* 106 AD2d 686, 688)."

Thus, where it is deemed necessary, this court may grant judgment based upon a reasonable assessment of the evidence, giving due consideration to the trial court's advantage of seeing and hearing the trial testimony first hand *(see, Kis-*

*singer v State of New York,* 126 AD2d 139, 141; *Cordts v State of New York,* 125 AD2d 746, 749).

It is an established rule of law that while not an insurer of the safety of travelers on its roadways, the State owes the traveling public the nondelegable duty of keeping its highways in a reasonably safe condition *(see, Friedman v State of New York,* 67 NY2d 271, 283). However, liability in such a situation may only be predicated upon proof that a highway plan was evolved without adequate study or a reasonable basis *(see, Weiss v Fote,* 7 NY2d 579, 589, *rearg denied* 8 NY2d 934). In the instant action, there is no dispute that a traffic signal light was required by statute to be installed at the intersection *(see,* Vehicle and Traffic Law § 1680 [c]; § 1681 [a]; *see also,* 17 NYCRR 271.4). Although a violation of a statute may be excused where reasonable care is exercised in an attempt to comply with its provisions *(see, Aranzullo v Seidell,* 96 AD2d 1048), in this case the DOT's plan to postpone the installation of a traffic signal after previously determining that the intersection should not be opened without such a device lacked a rational basis.

By letter dated October 10, 1980 the Regional Director of the DOT informed the Chairman of the Town of Southeast Planning Board that, with the addition of the first phase of the project, consideration might have to be given to the installation of a traffic signal. Handwritten on the DOT file copy of this letter was a notation of the Traffic Safety Group Engineer, Jeffrey Wickeri, stating that, *"[a] signal must be installed by developer or county".*

In February of 1981 the DOT promulgated a "Problem Definition and Project Proposal" for the intersection of Route 22 and relocated Putnam Lake Road. In relevant part, the DOT concluded that the "relocation and signalization" (i.e., the installation of traffic signals) of Putnam Lake Road would create a much safer condition.

On April 23, 1981, the DOT's regional traffic engineer, M. Mignogna, sent a letter to the developer which, in relevant part, stated that: "the following items must be addressed in order for us to grant a Highway Work Permit for non-State construction * * * 11. According to recent traffic counts taken at the existing Putnam Lake Road intersection, with the additional volumes to be generated by the first state development of Mt. Ebo, traffic signal control will be required. Consequently, we recommend that the plans for relocation of Putnam Lake Road also include the installation of a two phase

semi-traffic actuated signal. Thereafter, when the Department improves Route 22, the signal will be modified, accordingly".

On October 28, 1981, the developer submitted an application for a work permit to construct the relocated Putnam Lake Road. On November 24, 1981, the DOT approved the application and issued a highway work permit to the developer. In pertinent part, a letter accompanying the permit stated:

"In accordance with our telephone conversation, this permit was issued with the following contingencies * * *

"Based on the traffic counts performed by the State in conjunction with the traffic to be generated by Mt. Ebo, we see no means to allow the new intersection to operate in a safe manner unless it is properly signalized. Consequently, it will be the responsibility of your client, or its designated agent, to install a traffic signal prior to the opening of the roadway. Upon acceptance, the signal will be maintained by the State and modified thereafter to reflect the improvements being proposed by the Department".

In addition, on the highway permit, it stated that as a special condition: "This permit is being issued contingent upon installation of a new traffic signal at the intersection with Route 22. Details and final approval will be required before the new roadway is open to through traffic".

Since the DOT was on actual notice of the danger inherent in opening the intersection without a traffic signal device, and it having made the installation of a new traffic signal device a condition of the creation of the new intersection with Route 22, the delay in its installation was unjustified and constituted a breach of the State's duty to keep its roadways in a reasonably safe condition (see, *Friedman v State of New York, supra*, at 286). This breach constituted negligence which was a proximate cause of the accident.

It is well settled that in order for a plaintiff to recover damages, a defendant's negligence need not be the sole cause of the injury; rather it need only have been a substantial factor in bringing about the injury (see, *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507; *Galioto v Lakeside Hosp.*, 123 AD2d 421). Based upon the evidence adduced at trial the court erred by failing to consider the State's negligence as a concurrent proximate cause of the decedent's injuries (see, e.g., *Pellegrino v State of New York*, 121 AD2d 612; *Heffler v State of New York*, 96 AD2d 926).

Based upon our review of the record, we hold the State 35% at fault and the decedent 65% at fault for the accident and

remit the matter to the Court of Claims for a trial on the issue of damages. Rubin, J. P., Kooper, Sullivan and Harwood, JJ., concur.