Stephen Joyce, Appellant, v State of New York, Respondent.

Third Department, December 14, 1989

---

## APPEARANCES OF COUNSEL

*O'Connell & Aronowitz (Michael Rhodes-Devey* and *Salvatore D. Ferlazzo* of counsel), for appellant.

*Robert Abrams, Attorney-General (Michael S. Buskus* and *Peter J. Dooley* of counsel), for respondent.

### OPINION OF THE COURT

WEISS, J.

In this appeal from a judgment dismissing a claim for damages for personal injuries sustained in an accident at the Empire State Plaza (hereinafter Plaza) in the City of Albany, we are called upon to determine whether the doctrine of "limited government liability", which bars holding a governmental unit liable in negligence for errors or defects in a plan adopted for the construction of a public improvement, may properly be applied in this case. For the reasons which follow, we hold that the Court of Claims correctly held the doctrine to be applicable and therefore affirm the judgment.

The facts are not complicated. Claimant and his family went to the Plaza at about 6:30 P.M. on July 4, 1983 to view the fireworks display. Claimant's 12-year-old daughter became separated from the family and still had not been found by the time the fireworks were over and the crowd, estimated at 40,000 to 60,000 persons, began to leave the Plaza. While walking around the Plaza looking for his daughter, claimant ascended the steps leading to a restaurant. He then turned, stepped up and began to walk on the surface of an elevated marble wall which ran parallel to one of the wide ground-level Plaza sidewalks. This wall was 54 inches wide and 19 inches high and was closely bordered on one side by high shrubs. The elevation enabled claimant to better scan the crowd while walking. Although it was dark and there was no direct artificial lighting in this immediate area, claimant walked along the wall, taking advantage of the higher level to search through the crowd for his daughter. He continued for a distance of about 125 feet until he reached a plenum or opening in the wall used as an air intake for air conditioning equipment. The opening extended for 33 feet along the top of the wall with 10½ inches of marble identical to the other surface areas of the wall on each side of the opening. A metal grate covered the opening and consisted of varied rectangular-shaped open metal boxes or frames measuring from 2 to 8 inches in size with the tops of the rectangles set at different heights above the wall surface. Claimant saw the grating and initially avoided it by stepping on the 10½-inch-wide surface between the grating and the shrubs. When he consciously

attempted to walk on the grate, he lost his balance and his left foot went through one of the rectangular openings, resulting in a serious laceration and "degloving" injury to his left leg.

Claimant commenced this suit against the State seeking damages for conventional tort liability and negligence in the design, construction, installation and maintenance of the grating. Following a trial, the Court of Claims rendered judgment in favor of the State based upon the doctrine of qualified governmental immunity for errors and defects in a plan adopted for the construction of a public improvement. This appeal followed.

The Plaza is part of a huge, unique governmental office, convention center, museum, theater, park, plaza and parking complex. The design of the plenum was an integral part of the international style architectural theme used throughout the entire development. The Plaza was designed by renowned architects and the plans, along with each and every element and phase thereof, were reviewed in detail by a panel of experts called the South Mall Construction Group, which had been assembled from employees of the State Office of General Services. Claimant contends that the doctrine of qualified governmental immunity is limited to highways, streets, sidewalks and sewers, and should not be applied to the Plaza, and that the State is subject to the same principles of law as a private landowner *(see, Basso v Miller,* 40 NY2d 233).

The enactment of Court of Claims Act § 8 resulted in a waiver of the sovereign immunity enjoyed by the State, which thereafter assumed liability for its conduct and consented to have such liability determined in accordance with the same rules of law applicable to individuals and corporations *(Florence v Goldberg,* 44 NY2d 189, 194). However, "[a]t the same time, the State * * * retained its immunity in areas involving the exercise of expert judgment in the course of governmental planning for the public safety" *(Southworth v State of New York,* 62 AD2d 731, 740, *affd* 47 NY2d 874; *see, Weiss v Fote,* 7 NY2d 579, 587). This shield against liability for the unique character of lawfully authorized planning by governmental bodies provides special treatment limiting the extent to which tort liability may arise and prevents submitting to a jury the question of the reasonableness of such deliberations by executive bodies *(Weiss v Fote, supra).* This defensive armor against tort liability is known as the doctrine of limited immunity.

In determining whether the doctrine should be applied, its brief history is helpful. In the 1880's, Ellen Urquhart commenced an action to recover damages for personal injuries sustained when she fell on a sidewalk in the City of Ogdensburg, St. Lawrence County. She complained that the slope of the sidewalk was defective and caused ice to form from water carelessly spilled prior to her accident. The defense was based upon the ground that "negligence cannot be predicated upon the plan or slope on which the walk was built for that was in the discretion of the common council" *(Urquhart v City of Ogdensburg,* 91 NY 67, 71). The Court of Appeals reversed a judgment in the plaintiff's favor, holding that: "The rule is well settled that where power is conferred on public officers or a municipal corporation to make improvements, such as streets, sewers, etc., and keep them in repair, the duty to make them is *quasi* judicial or discretionary, involving a determination as to their necessity, requisite capacity, location, etc., and for a failure to exercise this power or an erroneous estimate of the public needs, no civil action can be maintained" *(supra,* at 71). The raison d'etre for this decision is found in *City of Lansing v Toolan* (37 Mich 152, 154), which held that "[c]ourts and juries are not to say [municipal corporations] shall be punished in damages for not giving to the public more complete protection; for * * * that would be to take the administration of municipal affairs out of the hands to which it has been entrusted by law". The progeny of *Urquhart v City of Ogdensburg (supra)* included a broad spectrum of cases in which the invocation of limited immunity protected municipalities from tort liability *(Barrett v State of New York,* 220 NY 423 [relocation of a beaver colony]; *Watson v City of Kingston,* 114 NY 88 [retaining wall and water runoff from a regraded street]; *Monk v Town of New Utrecht,* 104 NY 552 [involving a street and sidewalk plan without a fence along an embankment]; *Summerville v City of Yonkers,* 271 App Div 937, *affd sub nom. Cauley v City of Yonkers,* 297 NY 702 [splay connecting a sidewalk to a curb]; *White v Board of Educ.,* 249 App Div 520, *mod* 250 App Div 777 [design of school doors]; *Treadwell v City of Yonkers,* 192 App Div 421 [cover of a drainage basin between a street and a sidewalk]; *Owen v City of New York,* 141 App Div 217 [a school sidewalk]; *Pitman v City of New York,* 141 App Div 670 [steps to a comfort station]).

In 1960, *Weiss v Fote* (7 NY2d 579, *supra)* revitalized and strengthened the doctrine of limited immunity. In reversing a

judgment in favor of a pedestrian injured when two vehicles collided at an intersection because of an alleged defective traffic light, the Court of Appeals held that "courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public" *(supra,* at 588). The *Weiss* decision, initially the lodestar in the area of highway safety, became the seminal case for and extended the doctrine of limited immunity, holding, *inter alia,* that "[t]o accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts" *(supra,* at 585-586). The limited immunity rule in *Weiss* has been applied in varied aspects of highway safety plans *(see, e.g., Friedman v State of New York,* 67 NY2d 271 [three separate automobile accidents on highways]; *Ufnal v Cattaraugus County,* 93 AD2d 521, *lv denied* 60 NY2d 554 [placement of a deer crossing sign]; *Atkinson v County of Oneida,* 77 AD2d 257 [posting of stop signs]; *Cimino v City of New York,* 54 AD2d 843, *affd* 43 NY2d 966 [installation of a traffic light]; *Stuart-Bullock v State of New York,* 38 AD2d 626, *affd* 33 NY2d 418 [establishment of a speed limit]).

More recently, in *Kissinger v State of New York* (126 AD2d 139), this court employed the limited immunity doctrine in our rejection of a claim against the State alleging negligence in failure to reinstall guardrails alongside a highway. We found that the claimant failed to prove that the plan not to replace the guardrails was made without adequate study or that it lacked a reasonable basis *(supra,* at 141). The doctrine has also been extended to cover other aspects of governmental decision-making *(see, e.g., Southworth v State of New York,* 62 AD2d 731, *supra* [involving the design of an experimental driver's rehabilitation program]; *see also, Butz v Economou,* 438 US 478 [pertaining to the decision of Department of Agriculture officials to institute an enforcement proceeding]; *Scheuer v Rhodes,* 416 US 232 [concerning actions of Ohio officials in deploying the National Guard at Kent State University]).

With the viability of the doctrine firmly established, we turn to the case at hand. We consider first whether the Plaza as a whole should be shielded by the rule, and second whether it is applicable in a more narrow context to the plenum as an integral part of the public sidewalk. We answer both questions in the affirmative and find that the judgment in favor of the State was correctly made. The Plaza is a singularly unique creation which, together with the adjacent Capitol and Governor Alfred E. Smith State Office Building and nearby Court of Appeals Hall, comprises the seat of the three branches of government of this State. The concept and design stages as well as the construction were all subjected to scrupulous study, as was also the allocation of financial resources. None of these functions can be construed as proprietary or day-to-day functions of government. Even were we to employ a narrow interpretation of the doctrine, we would find the subject wall to be an appurtenance to the public sidewalk and, thus, well within the scope of public improvements as delineated in *Weiss v Fote* (7 NY2d 579, *supra*).

We similarly find claimant's final argument, that the plans as drafted by the State lacked a reasonable basis, to be without merit. The Court of Claims found that the plan and design of the plenum was a part of a bona fide planning choice made after a detailed review by a panel of experts, the plenum was not obviously and palpably dangerous, and the use of the top of the wall as a walkway was only remotely foreseeable. Thus, since the wall was a product of adequate study and a reasonable basis for its design existed, the exception to the rule was not triggered *(see, supra,* 7 NY2d, at 589). The testimony of competing architects presented nothing more than a choice between conflicting experts, which is insufficient to result in an exception to the doctrine *(see, supra,* at 588).

Claimant would have us examine the criteria considered by the State's professional staff, emphasize the factors claimed to have been overlooked and, with the benefit of hindsight, hold that those studies were inadequate as a matter of law. "We decline this invitation, for to do so * * * 'would constitute the type of judgment substitution that *Weiss v Fote (supra)* prohibits' " *(Friedman v State of New York,* 67 NY2d 271, 286, *supra,* quoting *Muller v State of New York,* 108 AD2d 181, 189, *revd* 67 NY2d 271). In sum, it should not be the function of a court to substitute its opinion for that of the governing municipality where, as here, a reasoned study has

been demonstrated *(see, Kissinger v State of New York,* 126 AD2d 139, 142, *supra).*

KANE, J. P., YESAWICH, JR., MERCURE and HARVEY, JJ., concur.

Judgment affirmed, without costs.