■ KENNETH HUNT, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 101841.) [828 NYS2d 355]—

Judgment of the Court of Claims of the State of New York (Alan C. Marin, J.), entered March 3, 2005, after trial, dismissing claimant's claim, unanimously reversed, on the law and the facts, without costs, the claim reinstated, liability on the part of the State is found, and the matter remanded for a trial on the issue of damages.

On September 15, 1998 claimant was arrested for grand larceny in the third degree (Penal Law § 155.35) and arraigned on a felony complaint in Criminal Court of the City of New York, New York County. The court set bail at $10,000 cash or bond and adjourned the matter to September 18, 1998. Claimant was unable to post bail and was remanded to the custody of the New York City Department of Correction (the DOC). Claimant, who was placed in the general population in the Manhattan Detention Center (the Center), asserts that he was sexually as-

saulted "several times" between September 16 and September 18 by a fellow inmate.

At his September 18 court appearance, claimant asked his lawyer (defense counsel) to request an order directing the DOC to place him in protective custody. The transcript of the brief exchange between the court, defense counsel and the prosecutor indicates that defense counsel requested to approach the bench and discuss "something [she] c[ould]n't put on the record" and an off-the-record discussion ensued. The court went back on the record and sent the case to a Supreme Court part with an October 1, 1998 adjourn date. In the September 18 entry in the court's "Record of Court Action," the court noted that the grand jury had returned an indictment, and memorialized the adjourn date and transfer to a Supreme Court part. The court also wrote "Protective Custody" in the entry and circled those words.

Upon returning to the Center, claimant was placed back in the general population. On September 21, the inmate who had previously assaulted claimant entered claimant's cell and, among other things, forced him to perform fellatio. The following day claimant called defense counsel and informed her both that he had not been placed in protective custody and that he had been assaulted. On either September 24 or 25, pursuant to a written order dated September 24 procured by defense counsel from Criminal Court, claimant was transferred from general population to protective custody.

Claimant commenced the instant action against the State seeking damages for injuries he sustained as a result of the September 21 incident. Claimant alleged that the state-employed court officers assigned to the part in which he appeared on September 18 failed to record the court's directive that claimant be placed in protective custody on the securing order (CPL 500.10 [5]; 510.10) committing claimant to the custody of the DOC. Based upon that failure, claimant asserted, the DOC was unaware of the directive and returned him to the general population, where he was vulnerable to sexual assault.

At trial, claimant presented evidence regarding the custom and procedure in Criminal Court in September 1998 for transmitting judicial directives concerning bail conditions and confinement from the judge to the DOC. This evidence was adduced from the testimony of a Criminal Court administrator and a court officer, both of whom had knowledge of the operations of the "all-purpose" part in which claimant appeared on September 18. According to these witnesses, a court officer is responsible for recording the judge's directives concerning bail conditions and confinement on the securing order, and the

securing order is then given to an employee of the DOC. In the event the judge orders that the defendant be placed in protective custody, the court officer is to note that directive on the securing order. The duty to record the judge's directives on securing orders is performed exclusively by court officers.

Claimant introduced into evidence a copy of his securing order. While the words "Protective Custody" were written on the securing order, the notation was not made on the portion of the order that such a notation would customarily appear,[1] the notation was not dated and there was no indication by whom it was written. Additionally, the testimony of Gore, a psychiatric social worker at the Center, and Sporrer, a captain with the DOC, indicated that no directive from the Criminal Court that claimant be placed in protective custody was received by the DOC prior to the September 24, 1998 order.

After the trial, Court of Claims dismissed the claim, finding that, while on September 18 Criminal Court directed that claimant be placed in protective custody, "claimant [did] not set forth . . . how the [September 18] order was administratively processed and transmitted [to the DOC], and how acts or omissions of the State [court officers] resulted in the DOC failing to place [claimant] in protective custody until September 25." Based upon our independent assessment of the evidence adduced at this nonjury trial and the reasonable inferences to be drawn therefrom (*see e.g. Marren v State of New York*, 142 AD2d 717 [1988]; *see also Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]), we reverse.

A public employee's discretionary acts may not result in the public employer's liability even when the conduct is negligent (*Lauer v City of New York*, 95 NY2d 95, 99 [2000]). By contrast, ministerial acts may subject the public employer to liability for negligence (*id.*). " '[D]iscretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result' " (*Haddock v City of New York*, 75 NY2d 478, 484 [1990], quoting *Tango v Tulevech*, 61 NY2d 34, 41 [1983]; *see Kagan v State of New York*, 221 AD2d 7 [1996]; *Marx v State of New York*, 169 AD2d 642 [1991]).

Here, the evidence adduced at trial demonstrated that on

---

**1.** The words "Protective Custody" were written on the top, right-hand portion of the securing order. Plaintiff's evidence regarding the custom and procedure in an "all-purpose" part established that such a directive customarily was memorialized in the "remarks" section located on the bottom, right-hand side of the securing order.

September 18, 1998 Criminal Court directed that claimant be placed in protective custody and that the court officers assigned to that part failed to adhere to the governing standard regarding the transmission of judicial directives concerning confinement from the judge to the DOC. The governing standard, as established by claimant's witnesses,[2] required one of the court officers in the part to record the judge's directive that claimant be placed in protective custody on the securing order, a ministerial act that the court officers failed to perform. As a result of this failure, the DOC was not aware, until September 24 or 25, that protective custody had been mandated and thus it returned him to the general population where claimant was sexually assaulted on September 21.

Accordingly, liability on the part of the State was established. We remand the matter to Court of Claims for a trial on the issue of damages.[3] Concur—Friedman, J.P., Sullivan, Nardelli, Catterson and McGuire, JJ.

---

2. An institutional custom or practice may constitute a governing rule or standard (*see Kagan, supra* [protocols adopted by facility constituted governing standards]).

3. Claimant, who limited his claim to the September 21, 1998 assault, may only recover damages for injuries proximately caused in that incident.