■ Fan Guan, Appellant, v State of New York, Respondent. [866 NYS2d 697]—

In a claim to recover damages for wrongful death, the claimant appeals from a judgment of the Court of Claims (Marin, J.), dated June 26, 2007, which, upon a decision of the same court dated May 24, 2007, made after a nonjury trial on the issue of liability, dismissed the claim.

Ordered that the judgment is affirmed, with costs.

On November 10, 2000 the claimant's decedent was killed when his car veered off the Northern State Parkway (hereinafter the parkway) in Suffolk County and struck a tree that was roughly 24 feet from the edge of the roadway and measured almost 20 inches in diameter. Although there were no witnesses to the accident, responding police officers and accident reconstruction experts opined at trial that the decedent's car hydroplaned and then slid sideways into the tree after traveling through a puddle that was 161 feet long, 15 feet wide, and 8 inches deep, stretching the entire width of the eastbound left lane of traffic. The claimant argued, inter alia, that the State of New York was required to expand the "clear zone" at the accident site to 30 feet in order to comply with modern highway design standards established after the parkway's initial construction. A clear zone is an area without fixed objects that is adjacent to a highway and intended to provide safe passage and a recovery area for vehicles that veer off the roadway. After a nonjury trial, the Court of Claims dismissed the claim, determining, among other things, that the State was entitled to qualified immunity and was not required to comply with the modern highway design standards established after the construction of the parkway. We affirm.

"[A] municipality owes to the public the absolute duty of keeping its streets in a reasonably safe condition" (*Friedman v State of New York*, 67 NY2d 271, 283 [1986] [internal quotation marks omitted]). However, "in the field of traffic design engineering, the State is accorded a qualified immunity from liability arising out of a highway planning decision" (*id.*). Under the qualified immunity doctrine, liability may arise where there is proof that the State's traffic design plan "evolved without adequate study or lacked reasonable basis" (*Weiss v Fote*, 7 NY2d 579, 589 [1960]).

At the trial, testimony and documentary evidence indicated that the State conducted an extensive assessment of the parkway system including, inter alia, lane widths, grades, ditch selections, curbs, shoulders, medians, and recovery areas. After the assessment, the State adopted a policy which provided for the establishment of 30-foot clear zones for new or major reconstruction of existing parkways and 20-foot clear zones for rehabilitation and minor upgrading. In adopting the policy, the State recognized that expanding the clear zone to 30 feet on existing parkways could result in the wholesale removal of bordering trees, the preservation of which was important to the design of the original parkways. Upon reviewing, among other things, accident records and the input of interested citizens, the State weighed the risks in maintaining a 20-foot clear zone with the benefits of roadside trees in adopting the policy. Under these circumstances, it cannot be said that the State's policy of maintaining a 20-foot clear zone on the parkways "evolved without adequate study or lacked reasonable basis" (id.; see Kissinger v State of New York, 126 AD2d 139 [1987]).

Testimony and documentary evidence adduced at trial also indicated that in 1985 the State replaced the parkway's wooden median with a concrete barrier and in 1994 repaved the road and improved the drainage system. The claimant argued that this work on the parkway constituted such significant repair and reconstruction that the State should have also expanded the clear zone adjacent to the roadway to 30 feet (in order to comply with modern highway design standards) by removing all fixed objects within that area, including the tree which the decedent's car struck. The claimant argued that if such a clear zone was not practical, the State should have erected a guide rail.

"[C]ompliance with design standards adopted after the construction of a highway is not required unless the municipality undertakes significant repair or reconstruction that would provide an opportunity for compliance with the new standards" (Guzov v State of New York, 48 AD3d 751, 752 [2008], quoting Cave v Town of Galen, 23 AD3d 1108, 1108-1109 [2005]; see Preston v State of New York, 6 AD3d 835 [2004]). Additionally, "[a]s a general rule, the State is not required to undertake expensive reconstruction of highways simply because the design standards for highways have been upgraded since the time of the original construction" (Vizzini v State of New York, 278 AD2d 562, 563 [2000]). The replacement of the median, the repaving of the road surface, and the improvements made to the drainage system did not materially alter the roadway itself and

did not constitute significant repair or reconstruction such that compliance with modern highway design standards was required (*see Vizzini v State of New York*, 278 AD2d 562 [2000]; *Benjamin v State of New York*, 203 AD2d 629, 630 [1994]; *cf. Guzov v State of New York*, 48 AD3d at 752).

Additionally, the State was not on constructive notice of a dangerous condition as the evidence produced at trial indicated that the daily traffic volume at the site of the accident was roughly 65,000 to 70,000 vehicles per day, and there were only 11 collisions with trees within the vicinity of the accident site from the years 1991 to 2000 (*see Racalbuto v Redmond*, 46 AD3d 1051, 1052 [2007]; *Trautman v State of New York*, 179 AD2d 635, 636 [1992]; *Rittenhouse v State of New York*, 134 AD2d 774, 776 [1987]; *Van De Bogart v State of New York*, 133 AD2d 974 [1987]).

The claimant's remaining contentions either are without merit or have been rendered academic. Rivera, J.P., Spolzino, Florio and Leventhal, JJ., concur. [*See* 16 Misc 3d 1103(A), 2007 NY Slip Op 51241(U).]