■ MICHAEL SCARIATI, Respondent, v ST. JOHN'S QUEENS HOSPITAL et al., Defendants, and LAGUARDIA MEDICAL GROUP, P. C., et al., Appellants.—In an action to recover damages for personal injuries based on medical malpractice, the defendants LaGuardia Medical Group, P. C., Jay Goldwyn, John Tiwary and M. Shapiro appeal (1) from so much of an order of the Supreme Court, Queens County (Joy, J.), dated September 1, 1988, as denied that branch of their motion which was to

set aside the liability verdict for failure to establish a prima facie case, and (2) as limited by their brief, from so much of a judgment of the same court, entered November 14, 1988, which, upon a stipulation of the plaintiff reducing the jury verdict, is in his favor and against the appellants in the principal sum of $150,000 ($100,000 for pain and suffering and $50,000 for loss of enjoyment of life).

Ordered that the appeal from the order is dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is reversed insofar as appealed from, on the facts and as an exercise of discretion, without costs or disbursements, and a new trial is granted on the issue of damages only, unless within 20 days after service upon the plaintiff of a copy of this decision and order, with notice of entry, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to reduce the verdict as to damages against the appellants to the principal sum of $50,000 for pain and suffering, representing vacatur of the award for loss of enjoyment of life and a further reduction in damages for pain and suffering, and to the entry of an amended judgment accordingly; in the event that the plaintiff so stipulates, then the judgment, as so reduced and amended, is affirmed insofar as appealed from, without costs or disbursements.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (see, CPLR 5501 [a] [1]).

In the evening of March 18, 1983, the plaintiff, then 18 years old, accidentally put his right hand through a glass storm door. The glass caused a laceration across his right forearm, which severed tendons and drove several glass fragments into the wound.

The plaintiff alleged that, as a result of the appellants' unwarranted delay in diagnosing his severed tendons, discovering that there was glass in the wound, and referring him to a hand surgeon, he suffered permanent injuries to his hand. While the trial court precluded the plaintiff's physician expert from testifying that the appellants' delay in diagnosing his severed tendons and referring him to a hand surgeon was a proximate cause of the plaintiff's injuries, the witness was permitted to testify, without objection, that the appellants'

delay in diagnosing that there was glass in the hand, which had to be removed, did contribute to the outcome of the treatment, to wit, permanent injuries to the hand. Further, the plaintiff called as a witness the appellant Dr. Shapiro, who treated the plaintiff. This witness, who saw the plaintiff about one week after the accident, testified that although it would be better not to delay surgery, he did not refer the plaintiff to a hand surgeon after that first visit. In addition, the plaintiff presented expert testimony that he did suffer a significant limitation in the use of his hand.

In order to establish a prima facie case of proximate cause, the "plaintiff need not eliminate entirely all possibility that a defendant's conduct was not a cause, but only offer sufficient evidence from which reasonable [persons] may conclude that it is more probable than not that the injury was caused by the defendant" *(Kennedy v Peninsula Hosp. Center,* 135 AD2d 788, 792; *see also, Locilento v Coleman Catholic High School,* 134 AD2d 39, 41; *Koster v Greenberg,* 120 AD2d 644, 645-646). Contrary to the appellants' contention, we find, as did the trial court, that the plaintiff offered sufficient proof on the issue of causation to warrant submitting the issue to the jury *(see, Locilento v Coleman Catholic High School, supra,* at 41; *Koster v Greenberg, supra,* at 645-646; *cf., Kennedy v Peninsula Hosp. Center, supra,* at 792). While the appellants presented evidence explaining the delay in the plaintiff's treatment, and expert testimony that the delay in performing the surgery did not affect the result, which was described by them as "very satisfactory" or "very good", the jury was free to reject their testimony.

However, we find that the damages, even after the plaintiff's stipulation to a reduction, were excessive to the extent indicated. We note in this regard that it was improper for the jury to render separate awards for pain and suffering and for "loss of enjoyment of life" *(McDougald v Garber,* 73 NY2d 246, 256). Thompson, J. P., Lawrence and Harwood, JJ., concur.

Balletta, J., concurs in part and dissents in part and votes to dismiss the appeal from the order and reverse the judgment insofar as appealed from, and to grant the appellants a new trial on the issue of liability and further, in the event the plaintiff fails to stipulate to a reduction in the jury verdict as to damages to $50,000, a new trial as to damages, with the following memorandum: I respectfully disagree with the majority's decision to the extent that I am of the opinion that the testimony permitted into evidence by the Trial Judge was not sufficient to prove that any deviation from good and accepted

medical practice was the proximate cause of the plaintiff's injuries. However, since I am also of the opinion that this failure in proof was due to the trial court's erroneous evidentiary rulings, rather than dismiss the complaint, I would remit the matter for a new trial on the issue of liability.

The plaintiff herein alleged that, as a result of the appellants' unwarranted delay in diagnosing his severed tendons and referring him to a hand surgeon, he suffered permanent injuries to his hand. At trial, the plaintiff failed to present any expert testimony that the appellants' delay in diagnosis caused his injuries; therefore, the proof of causation was insufficient (see, Kennedy v Peninsula Hosp. Center, 135 AD2d 788, 792). Nor was there sufficient evidence from which reasonable jurors could conclude that it was more probable than not that the injury was caused by the appellants. Although several witnesses testified that, generally, a delay in tendon surgery can compromise results, there was no testimony from any of the witnesses that delay necessarily leads to poor results or that a deviation from good and accepted medical practice caused the injuries complained of. Significantly, however, the insufficiency in the plaintiff's case as to causation directly resulted from the trial court's erroneous limitation of the testimony of the plaintiff's expert.

At the trial, the plaintiff's expert testified that, generally, a delay in tendon repair can compromise results. The trial court, however, precluded this expert from further testifying that the appellants' delay in this case was a proximate cause of the plaintiff's injuries. In contrast, not only were the appellants' experts permitted to testify that delay may compromise results; they were also permitted to testify that such was not the case in the plaintiff's situation (i.e., that his injuries were not the result of any delay). Thus, the plaintiff was doubly prejudiced: first, by the failure of the trial court to allow his expert to testify as to causation, and, second, by the appellants' experts being allowed to give their opinion that there was no causation.

A witness may testify as an expert so long as he or she " 'is skilled in the profession or field to which the subject relates, and that such skill was acquired from study, experience or observation' " (Karasik v Bird, 98 AD2d 359, 362, quoting from Meiselman v Crown Hgts. Hosp., 285 NY 389; McLamb v Metropolitan Suburban Bus Auth., 139 AD2d 572, 573). In this case, the plaintiff's expert stated that he personally observed many patients with severed tendons, reviewed the progress of those patients before and after surgery, and performed such

surgery himself occasionally. Such experience qualified him to testify as to whether the delay in repairing the plaintiff's tendons was injurious in this case.

Accordingly, since the failure to prove causation was the direct result of the trial court's ruling, a new trial is appropriate on the issue of the appellants' liability. I agree with the majority that the jury verdict as to damages was excessive to the extent indicated.