(November 12, 1991)

■ KENTON AMES et al., Respondents, v CITY OF NEW YORK, Appellant, et al., Defendant. (Action No. 1.) DERRICK REYNOLDS, Also Known as DERRICK BELTON, et al., Respondents, v CITY OF NEW YORK, Appellant, et al., Defendants. (Action No. 2.)—In consolidated actions to recover damages for personal injuries, the defendant City of New York appeals from so much of a judgment of the Supreme Court, Kings County (Vaccaro, J.), entered April 21, 1989, as, upon (1) a jury verdict finding the defendant City of New York 70% at fault and the codefendant Robert Locklear 30% at fault in the happening of the accident, (2) the granting of the motion by the defendant City of New York to set aside the jury verdict as to damages, and (3) a stipulation by the plaintiff Kenton Ames to reduce the award of damages to him from the principal sum of $14,013,655.16 to the principal sum of $4,513,655.16 ($900,000 for past pain and suffering, $600,000 for future pain and

suffering, $1,000,000 for past loss of enjoyment of life, $1,000,000 for future loss of enjoyment of life, $43,655.16 for past medical expenses, $50,000 for future medical expenses, $140,000 for past loss of earnings, and $780,000 for future loss of earnings), and (4) a stipulation by the plaintiff Derrick Reynolds a/k/a Derrick Belton to reduce the award of damages to him from $7,069,259.15 to $2,819,259.15 ($900,000 for past pain and suffering, $750,000 for future pain and suffering, $500,000 for past loss of enjoyment of life, $600,000 for future loss of enjoyment of life, $44,259.15 for past medical expenses, and $25,000 for future medical expenses), is in favor of the plaintiffs Kenton Ames and Derrick Reynolds a/k/a Derrick Belton in the principal sums of $4,513,655.16 and $2,819,259.15, respectively.

Ordered that the judgment is modified, on the law and the facts and as a matter of discretion, by (1) reducing the principal sum awarded to the plaintiff Kenton Ames to $1,013,665.16, representing the damages for past and future medical expenses and past and future loss of earnings awarded by the jury, and adding thereto a provision severing the plaintiff Kenton Ames' claims for damages for past and future pain and suffering and past and future loss of enjoyment of life and granting a new trial with respect to past and future pain and suffering unless he shall serve and file in the office of the Clerk of the Supreme Court, Kings County, a written stipulation signed by him consenting to reduce the verdict as to his damages for past and future pain and suffering from the principal sum of $3,500,000 to the principal sum of $2,000,000 and to the entry of an amended judgment accordingly, and (2) reducing the principal sum awarded to the plaintiff Derrick Reynolds a/k/a Derrick Belton to $69,259.15, representing the damages for past and future medical expenses awarded by the jury, and adding thereto a provision severing the plaintiff Derrick Reynolds' claims for damages for past and future pain and suffering and past and future loss of enjoyment of life and granting a new trial with respect to past and future pain and suffering unless he shall serve and file in the office of the Clerk of the Supreme Court, Kings County, a written stipulation signed by him consenting to reduce the verdict as to his damages for past and future pain and suffering from the principal sum of $2,750,000 to the principal sum of $1,250,000, and to the entry of an amended judgment accordingly; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the time for the plaintiffs Kenton Ames and Derrick Reynolds a/k/a Derrick Belton to serve and file a stipulation is extended until 20 days after service upon each of them of a copy of this decision and order with notice of entry; and it is further,

Ordered that in the event the plaintiff Kenton Ames so stipulates, then the judgment as to him, as so reduced and amended, is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that in the event the plaintiff Derrick Reynolds a/k/a Derrick Belton so stipulates, then the judgment as to him, as so reduced and amended, is affirmed insofar as appealed from, without costs or disbursements.

This action arises out of a 1981 automobile accident on the Interborough Parkway, during which a vehicle driven by John Amistadi was sideswiped by a car driven by the defendant Robert Locklear and was caused to vault over the median divider into the eastbound lane, crashing head-on into a van driven by the plaintiff Kenton Ames, in which the other three plaintiffs were passengers.

The plaintiffs' primary allegation of negligence against the defendant City of New York involved the City's failure to install, along the area where the accident occurred, a solid concrete median divider, known as a "Jersey barrier", which serves to reduce so-called "crossover" accidents such as the one at bar. It is uncontested that had a Jersey barrier been in place at the site in question the accident at bar would not have occurred. In the alternative, the plaintiffs maintained that the City should have repainted the roadway to reduce the lanes of traffic to one in each direction, so as to eliminate "sideswipe" accidents.

The City attempted to defend its inaction regarding these remedial measures, which it had recognized were necessary, by demonstrating that its 1975 fiscal crisis required it to set priorities for the projects that it would undertake, that it accordingly made repairs on only one portion of the Parkway because of lack of funding, and that it reasonably awaited State intervention and funding for any major reconstruction of the roadway.

On appeal, the City claims error in certain of the trial court's evidentiary rulings, asserting that it was thereby prevented from introducing evidence showing the extent of the State's involvement in reconstructing the Interborough Parkway or explaining how the State's role affected the City's decision making regarding the reconstruction. We disagree.

Inasmuch as the City unmistakably took the position at trial that its defense presented a question of law for the court's consideration only, it should not now be heard to complain that the jury was not apprised of all information pertinent to its defense *(see, Velez v City of New York,* 157 AD2d 370). In any event, much of the City's evidence regarding what it perceived to be the effects of the paralyzing fiscal crisis of the mid-1970's and the anticipated State reconstruction of the roadway was ultimately admitted into evidence.

We conclude that the Trial Judge properly found that the City's "budgetary defense" was legally insufficient.

A municipality owes the traveling public the absolute duty of keeping its highways in a reasonably safe condition *(see, Friedman v State of New York,* 67 NY2d 271, 283; *Weiss v Fote,* 7 NY2d 579, 584; *Carroll v State of New York,* 157 AD2d 697, 698). This duty includes the "obligation to provide and maintain adequate and proper barriers along its highways" *(Gomez v New York State Thruway Auth.,* 73 NY2d 724, 725), which equally pertains to median barriers *(see, Friedman v State of New York, supra,* at 286). While this duty is nondelegable, municipalities are accorded a qualified immunity from liability arising out of a highway planning decision which arises out of a concern for unwarranted intrusion into discretionary governmental functions *(see, Friedman v State of New York, supra; Weiss v Fote, supra).*

"Under * * * doctrine of qualified immunity, a governmental body may be held liable when its study of a traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan * * * Once the [governmental entity] is made aware of a dangerous traffic condition it must undertake reasonable study thereof with an eye toward alleviating the danger * * * Moreover, after the [governmental entity] implements a traffic plan it is 'under a continuing duty to review its plan in the light of its actual operation' *(Weiss v Fote,* 7 NY2d 579, 587 * * *) When, however * * * analysis of a hazardous condition by the municipality results in the formulation of a remedial plan, an unjustifiable delay in implementing the plan constitutes a breach of the municipality's duty to the public just as surely as if it had totally failed to study the known condition in the first instance" *(Friedman v State of New York, supra,* at 284-286).

In this case, a proliferation of accidents on the Interborough Parkway prompted a study of the roadway by the City's Department of Transportation, Office of Arterial Highway

Planning, which ultimately concluded in January of 1972. The report described the Interborough Parkway as "one of the more dangerous highways in the City" a characterization confirmed by City employees at trial, one of whom admitted that it was "probably the worst road we had". The report detailed the many hazards of the roadway, including the frequency of "sideswipe" and "crossover" accidents. Recognizing that the imperative major reconstruction of the Interborough Parkway was financially prohibitive in the absence of State and Federal funding, the study proposed that interim safety measures be implemented. While the report set forth four specific measures to "be done as soon as possible", these measures were not deemed exclusive, for the report continued: "This work, and any other that is deemed necessary to improve safety, should be implemented as soon as possible to serve in the interim period before reconstruction". The author of the study testified at trial that the installation of Jersey barriers along the entire length of the roadway was a needed safety measure.

Thereafter, the City retained N.H. Bettigole Co. to design the interim improvements for the Cypress Hills section of the Interborough, which had been identified by the City's study as a particularly dangerous portion of the highway. The 1973 report by N.H. Bettigole Co. made several recommendations for interim safety measures, including the erection of Jersey barriers, which are "economical to install and maintain", "throughout this entire section of the Parkway".

In 1974, the Interborough Parkway was designated a State arterial highway (L 1974, ch 585), thereby paving the way for State planning and funding of the major reconstruction. Notwithstanding its designation as a State arterial highway, title and control of the roadway remained vested in the City of New York. The State commissioned studies of the Interborough in 1974 and 1980. In addition, the safety measures for the Cypress Hills section recommended in the report by N.H. Bettigole Co. were implemented in 1974 and 1975. However, apart from this work the City performed no work on the Interborough Parkway during the nine years between the issuance of its 1972 study and the occurrence of the accident of 1981. Moreover, the City did not undertake any further studies of the roadway or review the post-1975 accident data so as to ascertain whether additional safety measures were necessary pending the reconstruction. In 1987, 15 years after the issuance of the 1972 study, the roadway was finally repainted so as to reduce traffic to one lane in each direction.

The funding for this came directly from the City's Department of Transportation expense budget and no capital allocation was necessary. The contracts for reconstruction of the Interborough Parkway were first let out by the State in October 1988.

In light of this evidence, the conclusion is inescapable that the City's qualified immunity defense was properly rejected as a matter of law. The City failed to demonstrate, at trial, that the nine-year delay between its recognition of the hazardous condition of the Interborough Parkway and the accident "stemmed from a legitimate ordering of priorities with other projects based on the availability of funding" *(Friedman v State of New York, supra,* at 287). Nor did it even attempt to adduce evidence tending to establish that it could not legitimately afford the cost of installing Jersey barriers or, alternatively, repainting the roadway. Hence, the delay remained "unjustified" and as such, it "constitute[d] a breach of the municipality's duty to the public just as surely as if it had totally failed to study the known condition in the first instance" *(Friedman v State of New York, supra; see, Carrol v State of New York,* 157 AD2d 697, *supra; Marren v State of New York,* 142 AD2d 717).

Moreover, the City failed to establish that, by virtue of the roadway's ultimate designation as a State arterial highway, it was released from its obligation to provide safe highways for its citizens. The State Arterial Highway System was created (L 1944, ch 543) in order to provide a statutory framework for the modernization and construction of city arterial routes with State and Federal funds as they became available *(see,* Highway Law § 349-b). While the State was thereby empowered to perform improvements on the Interborough Parkway, this did not relieve the City, which retained jurisdiction over the highway, as well as, *inter alia,* the right to make its own plans, acquire its own property, and perform its own construction and otherwise control arterial highways within City limits *(see,* Highway Law § 349-c [3.1]-[3.4], [3.6]), of its maintenance duties *(see, Gibbs v State of New York,* slip opn M-362 6S, Ct Cl, Aug. 6, 1987). Accordingly, the City's assertion that it was prejudiced by the trial court's alleged exclusion of evidence "explaining how this change affected the City's decision makers" is unavailing.

We find that the trial court improperly instructed the jury to render, as separate and distinct elements of damages, awards for pain and suffering and loss of enjoyment of life *(see, Nussbaum v Gibstein,* 73 NY2d 912; *McDougald v Garber,*

73 NY2d 246; *Scariati v St. John's Queens Hosp.,* 172 AD2d 817). Accordingly, the awards for past and future loss of enjoyment of life must be vacated and loss of enjoyment of life should be considered simply as one factor in determining the awards for pain and suffering. Considering loss of enjoyment of life as an element of pain and suffering, we conclude that the awards to both Kenton Ames and Derrick Reynolds for pain and suffering, even as reduced by the court, still "deviate * * * materially from what would be reasonable compensation" (CPLR 5501 [c]).

We find that an award of damages for past and future pain and suffering of $2,000,000 is warranted to compensate the now 35-year-old Kenton Ames for the anguish caused by multiple dental, orthopedic and internal injuries sustained which resulted in permanent jaw difficulties, a one-inch leg length differential, a lumbar injury, paralysis of the bowel, and a potentially recurring pneumothorax of the lung *(see, Policastro v Savarese,* 171 AD2d 849; *Venable v New York City Tr. Auth.,* 165 AD2d 871).

As to the plaintiff Derrick Reynolds a/k/a Derrick Belton, who was a nine-year-old child at the time of the accident and was caused to undergo several physically painful orthopedic procedures as well as several operations during prolonged hospitalizations, and who suffered a stunting of growth, a one-inch leg length differential, and will require additional surgery, we believe that an award of $1,250,000 is appropriate *(see, Gonzalez v Manhattan & Bronx Surface Tr. Operating Auth.,* 160 AD2d 420; *Murphy v A. Louis Shure, P. C.,* 156 AD2d 85; *Tejada v City of New York,* 129 AD2d 697).

Finally, the awards to Kenton Ames for loss of earnings are supported by a fair interpretation of the evidence and are not excessive *(see, Venable v New York City Tr. Auth., supra; Nicastro v Park,* 113 AD2d 129). Mangano, P. J., Kunzeman, Miller and Copertino, JJ., concur.