■ WALTER TRAUTMAN et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 68840.

Contrary to the claimants' contention, the State demonstrated that its delay in implementing Project Identification Number (hereinafter PIN) 0051.21, instituted by the New York State Department of Transportation (hereinafter DOT) in 1968, to correct various deficiencies along an 11.4-mile section of the Grand Central Parkway, inclusive of the Kew Gardens interchange, "stemmed from a legitimate ordering of priorities with other projects based on the availability of funding" *(Freidman v State of New York,* 67 NY2d 271, 287; *see also, Gutelle v City of New York,* 55 NY2d 794, 795; *Tomassi v Town of Union,* 46 NY2d 91). The scope of the project included the replacement and removal of certain barriers, and the addition of modern concrete barriers. At trial, the State adduced sufficient evidence to show that the period of

inactivity between the PIN 0051.21 proposal and its reconsideration in 1975, was due to a recessionary period which forced the DOT to reorganize its priorities to low cost, high return projects, and caused it to cancel 54 consultant design contracts outright, resulting in a delay of most of the projects. Additionally, there was evidence that during this time period the design standards for guide rail and barriers was in flux, with extensive testing of alternative designs, and that improperly designed barriers likewise posed serious safety concerns. These considerations, when viewed in conjunction with the financial austerity imposed upon the State during the early 1970's, sufficiently demonstrated that the delay in implementing PIN 0051.21 was justifiable.

Furthermore, there was a reasonable basis for the State's determination in 1977 to amend the scope of the project to include only a 4.5-mile segment on the eastern side of the Union Turnpike overpass, not including the Kew Gardens interchange. The Scope Change Report indicated that the budgetary allocation for the project was insufficient for the 11.4-mile length of the Parkway originally contemplated. The State showed that its decision to narrow the scope of the project was part of a reasonable plan of governmental services *(see, Friedman v State of New York, supra,* at 286), and that it had duly taken into account traffic conditions, as well as fiscal practicability *(Gutelle v State of New York, supra,* at 795; *Tomassi v Town of Union, supra; Weiss v Fote,* 7 NY2d 579). While the claimants' expert was of the opinion that the absence of a median barrier from the accident site was a departure from good and acceptable highway engineering practice, "something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public" *(Weiss v Fote, supra,* at 588). Finally, in the absence of any proof proffered by the claimants that the Kew Gardens interchange was more dangerous than any other segment of the Grand Central Parkway, there is no duty owed by the State to rebuild that interchange to conform to the new standards which evolved subsequent to its construction *(see, Segnit v State of New York,* 148 AD2d 519, 520; *Rittenhouse v State of New York,* 134 AD2d 774; *Van De Bogart v State of New York,* 133 AD2d 974; *Holscher v State of New York,* 59 AD2d 224, 227, *affd* 46 NY2d 792).

This court's recent decision in *Ames v City of New York* (177 AD2d 528), involving a 1981 accident on the Interborough

Parkway, does not require a contrary result. The evidence in *Ames* included a 1972 City DOT report which had described the Interborough Parkway as "one of the more dangerous highways in the City" *(Ames v City of New York, supra,* at 532) and had described the frequency of "sideswipe" and "crossover" accidents *(Ames v City of New York, supra,* at 532). This 1972 report also recommended that certain safety measures be implemented "as soon as possible" *(Ames v City of New York, supra,* at 532) until a major reconstruction of the Interborough Parkway could be undertaken. A followup study in 1973 recommended the installation of so-called "Jersey Barriers" which were "economical to install and maintain" *(Ames v City of New York, supra,* at 532). However, apart from some work around the Cypress Hills area, the City performed no work on the Interborough Parkway until 1987 when it repainted the roadway so as to reduce traffic from two lanes to one lane. Moreover, no further studies were made of the road. In the instant case, however, there was no similar evidence that the site of the accident was more dangerous than any other part of the highway system. Further, unlike the situation in *Ames,* there was evidence here of regular study of the matter by the State in light of developing safety technology and standards and in light of funding ability. Finally, whereas the defendant City in *Ames* failed to establish that it could not legitimately afford the cost of installing "Jersey Barriers" or of even repainting the roadway, here the State produced sufficient evidence to establish that it had made a legitimate ordering of priorities with other projects based on the availability of funding *(see, Friedman v State of New York, supra).*

We have examined the claimants' remaining contentions and find them to be without merit. Kunzeman, J. P., Sullivan, Lawrence and Balletta, JJ., concur.