Dr. Marcia S. WASSERMAN, Plaintiff,

v.

The CITY OF NEW YORK,
et al., Defendants.

No. CV 90–0201.

United States District Court,
E.D. New York.

June 30, 1993.

Alan M. Shapey, Harry H. Lipsig & Partners, New York City, for plaintiff.

Steven Levi, Asst. Corp. Counsel, Law Dept., New York City, for City of New York.

Christopher Jeffries, Rivkin, Radler, Dunne & Bayh, Uniondale, NY, for defendants Puca.

Cartiglia & Connolly, Hempstead, NY, for defendant Ryazantseu.

Paul I. Klein, Belair, Klein & Evans, New York City, for defendant Staten Island Hosp.

*MEMORANDUM AND ORDER*

GLASSER, District Judge:

Plaintiff in the above-captioned case brings this motion under Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from a Memorandum and Order of this court, dated October 8, 1992, which granted summary judgment in favor of defendant the City of New York (the "City"). *Wasserman v. New York,* 802 F.Supp. 849 (E.D.N.Y.1992). Plaintiff's motion rests primarily upon an allegation that a witness upon whose testimony this court relied misrepresented the extent of the City's studies of the accident location involved in this action as demonstrated by the more recent deposition testimony of another witness. For the reasons provided below, plaintiff's motion is denied.

## DISCUSSION

This lawsuit arose out of injuries sustained by Dr. Marcia Wasserman as a result of a traffic accident at 916 Rockland Avenue in Staten Island on November 27, 1988. On January 19, 1990, plaintiff Wasserman commenced suit against the City, drivers of various vehicles involved in the collision, and the hospital where plaintiff was treated. On October 8, 1992, this court granted, *inter alia*, the City's motion for summary judgment on the grounds of qualified immunity. That decision rested on a determination that no reasonable juror could find the City's study of Rockland Avenue traffic conditions to be "plainly inadequate" or its traffic plan for Rockland Avenue to be unreasonable. *See Friedman v. State*, 67 N.Y.2d 271, 502 N.Y.S.2d 669, 674, 493 N.E.2d 893, 898 (Ct. App.1986). Plaintiff now moves for reconsideration of that determination under Rule 60(b) of the Federal Rules of Civil Procedure. That rule allows a court, "on such terms as are just," to "relieve a party … from a final judgment, order or proceeding" for any one of the following specified reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud … misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The granting of relief under Rule 60(b) is committed "to the sound discretion of the district court" and is "generally granted only upon a showing of exceptional circumstances." *Mendell on Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990), *aff'd*, — U.S. —, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991).

 Plaintiff argues that information upon which this court relied in finding that the City was entitled to qualified municipal immunity in this action—specifically, deposition testimony of Richard Retting, Chief of the Department of Transportation Safety Division—has turned out to be "false and misleading." Fed.R.Civ.P. 60(b)(3). Plaintiff rests this argument upon the May 26, 1992 deposition testimony of Joseph Albano, Staten Island Borough Engineer, taken in connection with an unrelated personal injury action arising out of an accident on the same portion of Rockland Avenue. At that deposition, Albano testified that his jurisdiction involved only signage; this representation, plaintiff contends, demonstrates that the studies of 916 Rockland Avenue "were not all-encompassing engineering analyses of the location, but were solely concerned with signage, and signage alone." Plaintiff's 3(g) Statement at ¶¶ 4–6.

Plaintiff's argument fails to recognize the significance of this court's findings as to the adequacy of the Rockland Avenue studies as a whole, however. Albano did testify in May of 1992 that with respect to the 916 Rockland Avenue location, "the roadway in question," his studies involved only signage. *See* Albano Dep. at 40–45, 52–54. However, he also testified to three other essential facts: first, that the studies of Rockland Avenue extended over more than the "roadway in question" but rather involved the entire length of Rockland Avenue; second, that improvements other than signage—such as roadway reconstruction—were both recommended and implemented for portions of the Avenue other than the 916 location; and third, that decisions concerning what investigation and improvements were appropriate for a specific portion of the Avenue rested on accident records pertaining to that location. *See, e.g.,* Albano Dep. at 32–37, 58–63, 67, 70, 82–86, 134–41, 147–52, 177–79 & Exh. D. These observations are fully consistent with the October 1992 Memorandum and Order of this court which made the following observations about the City's proposed and implemented improvements on Rockland Avenue:

> According to the deposition testimony of Richard Retting, former chief of the City's Department of Transportation ("DOT") safety division, in 1987 DOT conducted an

*exhaustive review of Rockland Avenue's signage, road condition, and accident history.* (Retting Aff. 27–28) *DOT obtained the relevant accident reports from the police department, analyzing and separating them according to type of accident and section of roadway.* (Levi Affirmation Exh. J) This review also involved numerous field visits to sections of the road. (Retting Aff. 28) Joseph Albano, Staten Island Borough Engineer, who at the same time conducted his own analysis of Rockland Avenue's accident history over the previous 3 years, also took part in that personal inspection of Rockland Avenue, and accompanied Retting on at least one occasion. (Retting Aff. 28) *According to their studies, at least 263 accidents had occurred on Rockland Avenue during the three and one-quarter years prior to August 1986.* (Exh. H)

*As a result of the evaluation of Rockland Avenue's accident history,* in and around August 1987 the City added 182 new safety signs and 280 reflectors at various points along the roadway, installed 14,000 feet of thermoplastic lane markings, reduced speed limits or posted lower advisory limits, and approved a $400,000 emergency contract for a capital improvement plan. *The latter plan involved the erection of concrete barriers and the widening of the road along the stretch (between Brielle and Manor) where the overwhelming majority of fatalities had taken place. The decisions whether to make capital improvements (i.e., major reconstruction) on a given portion of roadway or simply to improve signage were based on the history of fatal and severe accidents along Rockland Avenue. Fiscal constraints also dictated that only priority locations receive major capital improvements . . . .*

The record makes abundantly clear that the independent and joint studies undertaken by Retting and Albano—both of whom are clearly qualified to conduct such studies and make appropriate recommendations for implementation, by virtue of their extensive experience and professional qualifications—meet the test of reasonableness sufficient to establish immunity. *The fact that the studies focused on the entire length of Rockland Avenue, and not solely on the 916 Rockland curve, does not diminish that conclusion. On the contrary, the extent of the information incorporated into the decisionmaking process—over three years' worth of accident records, as well as in-person inspections of the full 2.5 miles of roadway—was inarguably adequate to give the City a clear picture of Rockland Avenue's potential defects, both individually and in comparison with each other . . . .*

[P]laintiff seeks to divert attention from the fact that *the City's 1987 improvement program was a comprehensive scheme designed to address the various deficiencies in the roadway's design, with each improvement regarded not in isolation but rather in relation to the remainder of the roadway.* It remains undisputed, moreover, that the City's plan assigned importance to needed improvements commensurate with the severity of injury in earlier accidents—and therefore focused accordingly on the "serpentine curve" section of Rockland. (Retting Aff. 138–40, at Levi Reply Aff. Exh. R).

*See* 802 F.Supp. at 851–54 (emphasis added). As Albano's testimony does not call into question but rather confirms these findings, plaintiff fails provide a basis for finding false or misleading Retting's assertion that the study of the Avenue as a whole was exhaustive.

■ The second argument upon which plaintiff bases her Rule 60(b) motion is that Retting incorrectly represented that a change recommended by Albano—modernization and enlargement of a flashing amber light—had been implemented. *See* Albano Dep. at 111. The City admits this error—in other words, that the amber light was never enlarged from eight to twelve inches. However, it argues that the error does not justify reversal of the October Memorandum and Order. This court agrees and, in this regard, finds instructive comparison to *Estate of Murdoch v. Pennsylvania,* 432 F.2d 867 (3d Cir.1970), a case upon which plaintiff relies wherein the Third Circuit reversed a district court's denial of a Rule 60(b)(3) motion as an abuse of discretion.

*Estate of Murdoch* was a negligence action brought on behalf of an incompetent arising out of personal injuries sustained by that incompetent when his automobile collided with a fence built alongside the Schuylkill Expressway in Philadelphia. Defendants included the City of Philadelphia and various contractors who allegedly constructed the fence; the City also filed a crossclaim for indemnification against its codefendants. The district court granted summary judgment on behalf of the defendant contractors after receiving affidavits stating that those contractors had no involvement in designing, constructing or maintaining the subject fence. *Id.* at 868. The City thereafter filed a 60(b) motion alleging and providing evidence that one of the defendant contractors, contrary to representations in one of the affidavits, had installed the subject fence pursuant to a contract with the Commonwealth of Pennsylvania. The district court denied the City's motion to vacate, and the Third Circuit reversed based upon the following rationale:

> Clause (3) of Rule 60(b), F.R.Civ.P, makes a misrepresentation by an adverse party a ground for relieving a party from a final judgment against him. We think that such relief is especially appropriate where the judgment in question is a summary one, the entry of which has precluded a trial on the merits. Here, *if the documents presented by the City of Philadelphia are to be believed, ... [the defendant contractor] has been guilty of a misrepresentation on the basis of which the court dropped it from the action and granted it summary judgment on the City's crossclaim.* This is exactly the sort of situation to which clause (3) of the rule is directing.

*Id.* at 870 (emphasis added) (footnote omitted). As the above explanation makes obvious, the "misrepresentation" in *Estate of Murdoch* formed the grounds for the district court's order of dismissal. In contrast, in this action, the decision to increase the size of the signal did not play a part in this court's determination that no reasonable juror could find the City's decisions with re-

spect to the 916 Rockland curve to be unreasonable.[1] Although the failure to implement the change does strengthen to some extent the analogy to *Ames v. City of New York,* 177 A.D.2d 528, 575 N.Y.S.2d 917 (1991), discussed at 802 F.Supp. 855–56, that analogy is undermined by the fact that the City's failure to enlarge the flashing amber light was not mentioned by plaintiff or by her experts as a causal factor in her accident. *See* 802 F.Supp. at 855; *see also* Exhs. M & N. Thus, this case is wholly distinguishable from the situation presented to the district court and Third Circuit in *Estate of Murdoch.*

### CONCLUSION

▪ In sum, this court finds that the facts upon which plaintiff's Rule 60(b) motion rest do not provide a sufficient basis for rejecting the determination and rationale set forth in the October 1992 Memorandum and Order. Once again, it is appropriate to highlight the purpose behind qualified immunity for traffic decisions: prohibiting the court from substituting its judgment and discretion for that of the municipality. *See Friedman v. State,* 67 N.Y.2d 271, 502 N.Y.S.2d 669, 674–76, 493 N.E.2d 893, 897–98 (Ct.App.1986). Nothing provided in plaintiff's brief undermines this court's original finding that plaintiff has failed to raise any genuine issue of material fact concerning the reasonableness of the City's decisions regarding Rockland Avenue. Accordingly, plaintiff's 60(b) motion is denied.

SO ORDERED.

---

1. Furthermore, as the City notes, failure to implement the change was available to all parties at the time of the initial motion. (*See* Brief in Opposition at 2–3)