OPINION OF THE COURT
Frank S. Rossetti, J.
This wrongful death claim arises from a "crossover” automobile accident on the Southern State Parkway (S.S.P.) in Massapequa, Town of Oyster Bay, Nassau County. Claimant contends a proximate cause of the accident was negligence of the State in not having a median barrier in the relevant area.
On February 27, 1988, at about 9:25 A.M., Winnion Buskey was driving westbound on the S.S.P. between the Hicksville Road and Seaford-Oyster Bay (State Route 135) exits. In this area the S.S.P. had three lanes in each direction separated by a grass median of varying width which was bounded by angled, seemingly mountable curbs. Westbound there was also an entrance, acceleration lane for traffic entering from Hicks-ville Road. On the median were bushes and trees, as well as a six-foot high chain link fence down the center. At the same time, motorist Craig Heuermann was proceeding eastbound on said Parkway in the extreme right-hand lane when he lost control and veered to the left across two lanes of traffic onto the center median. He continued across the median, through the chain link fence and onto the leftmost westbound lane of the S.S.P.[1] There he hit a car head on and then hit decedent’s car broadside, causing the latter to spin to the west end of the westbound acceleration lane. The Heuermann car was then hit by another car. While it was cloudy, the investigating police officer reported the roadway was dry. Mr. Heuermann was charged with various offenses as a result of the accident and pleaded guilty to criminally negligent homicide and one of two counts of driving while intoxicated (see, at 797-798, infra). The width of the median where Mr. Heuermann crossed it was measured by the police at 5216 feet while one of claim *794 ant’s experts estimated he crossed it where the width was 45 feet. It was not clear whether the police measurement was from curb to curb (as said expert’s was) or from the painted lane lines adjacent thereto, but, even using claimant’s measurements (her said expert submitted a sketch showing the increasing width of the median east to west), our review of the evidence indicates the median was at least 48 feet wide where said driver crossed it.
This court has written recently and extensively on the duty of the State with respect to median barriers on State parkways. (See, Abrams v State of New York, Ct Cl, claim No. 74883, Jan. 17, 1992, Rossetti, J.) The thrust of this opinion is the State should only be held responsible for crossover accidents in which its negligence is a substantial factor (see also, PJI 2:70). As noted in Abrams, a median barrier is required only where a dangerous condition exists, i.e., where there is such a reasonably foreseeable danger of crossover accidents that the added protection of a barrier is called for in the exercise of reasonable care (see, Abrams v State of New York, supra, slip opn, at 8).
As pointed out by claimant, there is more than one way to prove a dangerous crossover condition (see, Gillooly v County of Onondaga, 168 AD2d 921, 922) and one of the most common and persuasive is prior similar accidents. Claimant generally refers to accidents cited in a postaccident State report and study, and while such include accidents prior to the instant one, only two were on the westbound side between the relevant exits.[2] However, claimant made no attempt at trial to show the similarity of any prior accidents. (Cf., Rittenhouse v State of New York, 134 AD2d 774, 776, and case cited.)[3] Rather, she refers to a statement in said report that such was initiated due to the similarity of conditions on the S.S.P. within the studied stretch of highway in general (i.e., the 16.8 miles in Nassau County) vis-á-vis those specific locations where accidents occurred. We do not find this justification for *795 a report to be an admission by State officials that said entire length of the S.S.P. was dangerous as far as median barriers were concerned. (Cf., Gillooly v County of Onondaga, supra.) This is the inference claimant would have us draw and we simply do not find sufficient facts to support such. Said report made reference to locations of polished concrete pavement with reduced coefficients of friction which posed potential dangers with respect to skidding and to curving geometries at sections of the S.S.P. as being potential contributing factors in crossover accidents. However, there is no adequate evidence either was present in the relevant area of this accident. The eastbound lane where the criminally negligent (see, at 793, supra) Mr. Heuermann lost control was asphalt, not concrete, and the curve at that point was not substantial (see, at 795-796, infra). In fact, Mr. Heuermann’s noted admission (see, n 1, supra) indicates that no highway condition was a factor in his loss of control. Admittedly, this is not conclusive with respect to the lack of a median being a proximate, aggravating factor, but, absent other evidence, we find reliance on said reports or the conditions described therein wholly unpersuasive. We also note that the fact median barriers were erected nearby (i.e., to the east) does not require any finding of negligence with respect to the median involved here (see, Abrams v State of New York, supra, slip opn, at 7), particularly since the median where barriers were installed was less than 36 feet (see, supra; at 796, infra).
The only other possible basis for State liability indicated in claimant’s case is the testimony of her two experts, to wit, an Automobile Club engineer and a former Nassau County engineer. However, neither impressed the court as finder of fact with their knowledge of the relevant facts or the existence of proper bases for their opinions. As indicated, no showing was made of any relevant and material accident history or of admissions by State officials to support said experts’ opinions (see, Gillooly v County of Onondaga, supra). While both said experts referred to four prior accidents within 4 to 6/10ths of a mile of Mr. Heuermann’s negligent crossover, neither was able to provide any details of said accidents or otherwise demonstrate similarity thereof material to would-be dangerousness at the subject location. Both of claimant’s experts referred to highway geometries as a basis for their opinion that a median barrier was required where Mr. Heuermann careened across the S.S.P., but one admitted he had no knowledge of such geometries and the other stated that he believed *796 the eastbound curvature was of the order of two to three degrees, a minimal curve at best.[4] Said latter expert contested the State’s guideline of a minimum median width of 36 feet for median barriers (see, Abrams v State of New York, supra, slip opn, n 5), but, absent adequate supporting evidence, we find this nothing more than a difference of opinion between experts, an insufficient basis for State liability. (See, e.g., Friedman v State of New York, 67 NY2d 271, 284, and case quoted.) Further, it is claimant’s burden to show such a guideline lacked an adequate study or was not otherwise reasonably based (see, e.g., Alexander v Eldred, 63 NY2d 460, 463-464), and we do not find that burden sufficiently met. Claimant’s other expert also referred to a weaving traffic pattern (cf., Abrams v State of New York, Ct Cl, claim No. 74883, Jan. 17, 1992, Rossetti, J., slip opn, at 14-16, supra), but presented no specific factual matter in support thereof, other than his observations at two unspecified times after the accident (cf., supra). We thus do not find this factor to have been sufficiently shown to be a dangerous condition requiring a median barrier in the subject area.
The seeming underlying rationale of claimant’s case and the opinions of her experts is that there were a lot of accidents on the S.S.P. in Nassau County in years prior to the one at bar, some were crossover accidents and thus this stretch of highway should have been considered unreasonably dangerous with respect to such accidents for the entire length thereof. While the characterization of a part of the S.S.P. as "Blood Alley” may sell newspapers, such a generalization is not a sufficient basis for legal liability against the State. The law and this court require relevant and material evidence of State negligence, unreasonable action or inaction and proximate causality. (See, Abrams v State of New York, supra, slip opn, at 7.) We of course sympathize with the unfortunate, innocent victims of crossover accidents, and the State, through its Department of Transportation’s continuing studies thereof since the early 1980’s, has reflected a comparable concern (said reports also show adequate study by defendant — see, supra, slip opn, at 19-21). Nevertheless, simplistic and nonspe *797 cific claims of negligence in regard to crossover accidents are not an adequate basis on which to ground liability. Reasonable discretionary determinations of government officials are to be accorded qualified immunity (see, supra) and the initial, 1983 State report, which was important evidence in the Abrams case, also dealt with the S.S.P. (see, supra, slip opn, at 4). Certainly, if it were shown that a specific location on the 5.5. P. had been negligently designed, or that the State had received notice of crossover problems with respect thereto, then we would have no hesitation in holding defendant responsible under the requisite legal standard. However, simply because crossover accidents have occurred on the S.S.P. in Nassau County or even on parts thereof near the subject accident does not legally establish that such a stretch of that highway is per se dangerous just because such an accident occurs there.[5] The State’s 36-foot rule apparently has a reasonable basis and claimant has not shown otherwise (see, Boyd v State of New York, 103 AD2d 882, 883; cf., Abrams v State of New York, supra, slip opn, at 12-14). Absent an accident history, predisposing geometries or other factors evincing a potential crossover danger, we find State reliance thereon reasonable. As stated by defendant’s engineering expert, the presence of a median barrier itself constitutes a hazard (particularly the concrete barrier recommended by one of claimant’s experts) and this was thus a countervailing factor to just constructing median barriers along the entire length of the 5.5. P. (see also, Boyd v State of New York, supra). Further, there was also the factor of fiscal constraints and priorities associated therewith. (See, Trautman v State of New York, 179 AD2d 635; Abrams v State of New York, supra, slip opn, at 4, 5, 21-23; see also, Quinn v State of New York, Ct Cl, claim No. 71151, Jan. 5, 1989, Rossetti, J., slip opn, at 7-9.)
The cause of this accident was the negligent driving by an intoxicated driver. The evidence showed Mr. Heuermann had a blood alcohol level of .20, twice the legal limit (see, Vehicle and Traffic Law § 1192 [2]), and a blood cocaine level of .05 milligrams. Obviously, this was a man who should not have been driving. Claimant’s argument that the State should have reasonably foreseen such a driver is simply without merit. *798 (See, e.g., Tomassi v Town of Union, 46 NY2d 91, 97; Abrams v State of New York, supra, slip opn, at 14.) Additionally, while there was no specific proof directed to the issues of the angle or speed at which the Heuermann vehicle crossed the median, rough calculations by the court (based on information personally observed by the investigating police officer) indicate an angle of more than 30 degrees. One of claimant’s experts indicated he believed a concrete barrier should have been in place (but see, at 797, supra), yet arguably a corrugated metal barrier would have been the one installed for a median of this width (see, Abrams v State of New York, supra, slip opn, at 23), that is, if a barrier were called for on a median of this width in the first place. Absent proper expert proof of the speed and angle at which the Heuermann vehicle would have impacted such a barrier, it is seemingly speculative, in light of the Abrams case, to conclude as a matter of fact that the appropriate median barrier would have prevented the subject accident. (See, supra, slip opn, at 23-25.) Rather, as indicated, the evidence indicates that the sole legal cause of this accident was said negligent driving by Mr. Heuermann. The lack of a median barrier here was not shown to be a negligent, unreasonable omission which proximately contributed thereto.
Accordingly, based on the foregoing and the entire trial record, we find claimant has not met her burden of proving by the probability required in this wrongful death case (see, e.g., PJI 1:61) that a dangerous crossover condition existed where the Heuermann vehicle crossed the S.S.P. median or that any negligent or unreasonable conduct by the State was a proximate cause of the collision resulting in Mr. Buskey’s death. Defendant’s trial motions to dismiss, upon which decision was reserved, are therefore now granted.

. Mr. Heuermann claimed in a statement to the police that he lost control and skidded when he applied his brakes due to an abruptly slowing car ahead of him, but he admitted to another driver after the accident that he mistakenly hit the accelerator rather than the brakes. Given the circumstances of the accident, particularly the speed at which Mr. Heuermann must have been going to traverse the distance and cause the damage he did (the police officer who investigated the accident estimated Mr. Heuermann was going about 61 m.p.h. while veering across said two eastbound lanes [see above]), as well as his intoxicated and "coked-up” condition at the time (see, at 797-798, infra), we find this latter version the more plausible.

. Claimant also submitted an exhibit showing two 1988 accidents, but one appeared to be the accident at bar and the other was on the eastbound side of the S.S.P. In any event, no details were provided to show the required similarity (see above).

. Also, the fact claimant could show only two accidents even arguably relevant to the subject area over the seven-year plus period covered by State reports (see, Abrams v State of New York, supra, slip opn, at 4, 11-12, 19) does not support her case, particularly in view of the large traffic volumes on this stretch of highway each year.

. Defendant’s engineering expert testified the curve’s design speed was 86 m.p.h., which was well above the highway’s 55 m.p.h. speed limit and even the 61 m.p.h. estimated speed of Mr. Heuermann as he swerved toward the median (see, n 1, supra). Also, the court’s review of the relevant State plans indicated the curvature of the highway for eastbound traffic did not create any significant potential for median crossovers.

. Claimant additionally presented evidence of letters from a private citizen concerning crossover accidents on the S.S.P., but such were general and he admitted he made no complaints with respect to the stretch between the two exits involved here (see, Abrams v State of New York, supra, slip opn, at 17-18).