■ VICTOR CRUZ, Respondent, v CITY OF NEW YORK, Appellant, et al., Defendant. [607 NYS2d 969] —In an action to recover damages for personal injuries, the defendant City of New York appeals from a judgment of the Supreme Court, Kings County (Garry, J.), entered July 24, 1990, which, upon a jury verdict in favor of the plaintiff finding the appellant 90% at fault in the happening of the accident and the plaintiff 10% at fault in the happening of the accident, awarded the plaintiff the principal sum of $900,000, representing $90,000 for past lost earnings, $400,000 for future lost earnings, $250,000 for past pain and suffering, and $260,000 for future pain and suffering (i.e., $1,000,000 reduced by 10%).

Ordered that the judgment is reversed, on the facts, and as an exercise of discretion, with costs, and a new trial is granted on the issue of liability; and it is further,

Ordered that a new trial is granted on the issue of damages for past lost earnings and future lost earnings, unless the plaintiff stipulates to decrease the verdict as to damages awarded for past lost earnings from $90,000 to $65,000, and for future lost earnings from $400,000 to $135,000; and it is further,

Ordered that the findings of fact as to damages for past and future pain and suffering are affirmed.

This action arises from a June 1985 accident on the pedestrian walkway of the Williamsburgh Bridge. As the plaintiff was bicycling across the bridge, his front tire allegedly became lodged in a depression on the pedestrian path, causing him to be flung from his bicycle onto the walkway, sustaining injuries. The plaintiff alleged that the defendant City of New York was negligent in failing to maintain the walkway in a reasonably safe condition. The City, *inter alia,* asserted a budgetary defense to liability and claimed that the plaintiff's conduct constituted a superseding cause of the accident.

It is settled that a governmental entity has a duty to the public to keep its streets in reasonably safe condition *(see, Friedman v State of New York,* 67 NY2d 271, 283; *Weiss v Fote,* 7 NY2d 579, 584). While this duty is nondelegable, municipalities are accorded a qualified immunity from liability arising out of a highway planning decision which derives from a concern about unwarranted intrusion into discretionary governmental functions *(see, Friedman v State of New*

*York, supra; Weiss v Fote, supra).* Once a governmental entity becomes aware of a dangerous condition, undertakes a reasonable study thereof with an eye toward alleviating the danger, and formulates a remedial plan, "an unjustifiable delay in implementing the plan constitutes a breach * * * just as surely as if it had totally failed to study the known condition in the first instance" *(Friedman v State of New York, supra,* at 286). The deferment of remedial action may, however, be justified by proof that "the delay stemmed from a legitimate ordering of priorities with other projects based on the availability of funding" *(Friedman v State of New York, supra,* at 287; *see, Trautman v State of New York,* 179 AD2d 635; *Longo v Tafaro,* 137 AD2d 661; *Puliatti v State of New York,* 91 AD2d 1192).

In this case, the City acknowledged that it had notice of the defect claimed, i.e., that a number of the asphalt tiles forming the uppermost layer of the walkway were broken and missing, by way of a comprehensive study of City-maintained bridges that it had commissioned. The City, however, asserted that its decision to defer repair of the walkway surface and to make other repairs to the bridge's structure instead arose from a legitimate ordering of priorities in light of budgetary constraints. However, no evidence was adduced to explain the precise budgetary limitations under which the City was operating, nor was any evidence adduced to explain why the expense budget for "critical maintenance contracts" was only $2,000,000 when the Department of Transportation capital budget for bridges for 1985 was $244,000,000. In addition, the City's bridge engineer, who participated in the budget process, admitted that even the $2,000,000 figure was flexible and not "set in concrete". Moreover, the City failed to establish that the walkway was included in the City's hierarchy of anticipated projects, i.e., that its inaction was, indeed, pursuant to a "plan" *(see, Ames v City of New York,* 177 AD2d 528). Thus, the City's budgetary defense was properly rejected.

The City contends that the plaintiff's extreme conduct in riding his narrow-tired bicycle late at night, on a poorly-lit pedestrian path which the plaintiff knew from previous experience was damaged, while the plaintiff was impaired by fatigue and the consumption of alcohol, was a complete superseding cause of the accident. We find that this argument is without merit. It was foreseeable that a bicyclist would use the walkway, despite it being, as the City conceded, "riddled with defects", since the walkway was open to the public *(see, Davis v City of Cohoes,* 131 AD2d 907; *Derdiarian v Felix*

*Contr. Corp.,* 51 NY2d 308; *Bahan v Green Bus Lines,* 96 AD2d 876, *affd* 61 NY2d 922; *Snyder v Moore,* 72 AD2d 580). Moreover, the foreseeable risk that a pedestrian or bicyclist would use the defective walkway and thereby become injured is the same risk which required the City to properly maintain it *(see, Moran v City of New York,* 153 AD2d 607; *Sanford v State of New York,* 94 AD2d 857).

We do, however, agree with the City's claim that the jury's apportionment of only 10% of fault to the plaintiff was against the weight of the credible evidence *(see, Nicastro v Park,* 113 AD2d 129) and, accordingly, grant a new trial limited to this issue.

Finally, on the evidence adduced at trial, the award for lost earnings is excessive to the extent indicated. Thompson, J. P., Bracken, Balletta and Santucci, JJ., concur.