■ Oneonta Dress Company, Inc. Respondent, v Ozona-USA, Inc., Appellant.—Levine, J. Appeal from a judgment of the Supreme Court in favor of plaintiff, entered July 15, 1985 in Otsego County, upon a decision of the court at Trial Term (Harlem, J.), without a jury.

The essential facts as found by Trial Term are as follows. In May 1982 plaintiff and defendant, a New York subsidiary of a French corporation, entered into a contract whereby defendant was to ship precut garment pieces for a winter line of children's clothing from France to plaintiff, who would assemble the pieces and ship the finished garments to defendant for retail distribution. An initial deadline of mid-September was set for plaintiff to complete production. Garment pieces began to arrive at plaintiff's plant in late May and early June 1982, but the task of assembling them could not be commenced

since packing lists were not included with the shipments and different pieces could not be identified and sewn together. The packing lists eventually arrived in the latter part of July. However, shipments of garment pieces continued to be delayed throughout the summer and often arrived incomplete.

Notwithstanding the foregoing, the parties commenced negotiations for plaintiff to begin manufacturing a summer line of clothing for defendant in the fall of 1982. Defendant sent plaintiff samples of materials and specifications on styles and the number of garments to be assembled, and plaintiff purchased the machinery necessary to produce the garments. A letter to plaintiff from defendant's France office dated August 16, 1982 stated that summer styles and prices "have been reserved for your production". Three thousand garment pieces were subsequently shipped to plaintiff.

Thereafter, the relationship between the parties deteriorated. Defendant fell behind in payments on the winter line contract and informed plaintiff that it would not accept shipments of assembled garments after October 29, 1982. On October 26, 1982, plaintiff advised defendant that a number of items were ready for shipment but, due to defendant's delinquent account, it would require payment on delivery. Defendant neither accepted further deliveries nor remitted further payments. Plaintiff then commenced the instant suit for breach of both the winter and summer line contracts. Defendant denied that a contract existed for a summer line. It counterclaimed on the winter line contract, alleging that plaintiff's failure to complete the assembling process in conformity with deadlines, as well as plaintiff's unilateral modification of the contract by its October 26, 1982 demand for payment on delivery, put plaintiff in breach of that contract.

Trial Term found defendant to be in breach of the winter line contract and attributed plaintiff's production delays to defendant's failure to timely and properly ship precut pieces and packing lists. Damages were assessed at $17,759.66, constituting the unpaid balance on that contract minus moneys received by plaintiff from the sale of garments left in its possession after defendant refused their delivery. The court also concluded that a contract existed regarding the production of a summer line of clothing and found defendant to be in breach thereof. Lost profit damages of $32,479.50 were assessed by subtracting saved labor and overhead costs from the gross revenues expected on that contract. This appeal by defendant ensued.

Defendant contends that Trial Term's determinations re-

garding the breach of the winter line contract and the existence of a summer line contract are contrary to the weight of the evidence. However, the court's findings turned upon the credibility of the witnesses, and were fully borne out by the testimony of the actual participants in the transactions whom plaintiff called as witnesses, that is, the president of plaintiff and the former president of defendant. In a nonjury trial, we may weigh the relative probative forces of the conflicting inferences that may be drawn from the testimony and grant the judgment which upon the evidence should have been granted by the trial court *(Arnold v State of New York,* 108 AD2d 1021, 1023, *appeal dismissed* 65 NY2d 723; *Taylor & Jennings v Bellino Bros. Constr. Co.,* 106 AD2d 779, 780). However, we are reluctant to overturn findings based upon the credibility of witnesses *(id.).* Accordingly, we defer to the decision of the trier of the facts in this case, who was in a better position to assess the evidence and the credibility of the witnesses than a reviewing court.

We are similarly unpersuaded by defendant's claim that plaintiff failed to submit sufficient evidence of damages suffered as a result of defendant's breach of the summer line contract. The loss of entire profit is a proper measure of contract damages and may be recovered when the injured party offers some adequate basis for computing the amount *(Plant Planners v Pollock,* 60 NY2d 779, 780; Restatement [Second] of Contracts § 345 [a]; § 347 [1981]). Here, plaintiff's accountant testified as to the expected profit from the summer line contract and the manner in which he arrived at that figure. That evidence was, therefore, sufficient for Trial Term to determine plaintiff's damages. Moreover, contrary to defendant's assertions, although plaintiff had a duty to mitigate damages, defendant had the burden of showing that damages could have been prevented *(see, Cornell v T. V. Dev. Corp.,* 17 NY2d 69, 74) and no such proof was submitted here.

Judgment affirmed, with costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.