■ STATE OF NEW YORK, Respondent, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant. [642 NYS2d 367]

—Peters, J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered June 15, 1995 in Albany County, which granted plaintiff's motion for summary judgment.

Prior to 1970, plaintiff, through its Department of Transportation, sought to construct a portion of the Cross Westchester Arterial (hereinafter the arterial) in Westchester County. Since the location of some utilities owned by defendant would interfere with that construction, defendant requested, pursuant to Highway Law § 10 (33), that all utility relocation work be performed by plaintiff when it commenced its work on the arterial. Plaintiff and defendant therefore entered into a standard "preliminary utility work agreement" (hereinafter the preliminary agreement) which incorporated several documents by reference. Among such documents were plan sheets[1] which stated that the work under the contract was to be completed in conformance with defendant's previously adopted specifications and plans, as amended, and except as modified on other plan sheets and in the itemized proposal. The itemized proposal specifically noted that the "[g]eneral [s]pecifications for [c]onstruction and [i]nstallation of [defendant's] [f]acilities shall be a part of these [s]pecifications" and that "[t]he New York State [p]ublic [w]orks [s]pecifications and [s]tandard [s]heets shall control any conflicts in the [s]pecifications for [defendant's] [f]acilities". Moreover, as mandated by Highway Law § 10 (33), the cost of all of the work was to be the sole responsibility of defendant.

Yonkers Contracting Company (hereinafter Yonkers) was awarded the contract to construct the arterial. The estimate rendered to defendant, pursuant to Highway Law § 10 (33), was in the amount of $309,500[2] which had appropriately included a proportionate share of plaintiff's engineering costs (see, Highway Law § 10 [33]). Defendant deposited this amount with the Comptroller (see, Highway Law § 10 [33]) in a series of three payments.

During the construction of the arterial, defendant concedes that it requested various changes, modifications and revisions of the work originally contemplated which resulted in an increase in the cost of the work. According to plaintiff, however, these changes and modifications increased the cost by

---

1. Plan sheets contain pictorial illustrations of the contract work to be accomplished.

2. At first, plaintiff estimated the cost to be $250,365.64 which was later increased pursuant to a revised estimate to $265,531.78. After Yonkers' bid was accepted, the estimate was again revised to reflect the increased cost of the bid.

$17,384.61. Moreover, unanticipated field conditions required the placement of many conduits and gas mains deeper than originally contemplated, further increasing the cost in the amount of $35,607. Finally, due to a conflict between defendant's specifications and those of plaintiff, discovered by Yonkers during the course of its work, there was yet another increase in cost to defendant in the amount of $84,308.89, all amounting to a total deficit of $137,300.50 which, upon demand, defendant refused to pay.

Plaintiff thereafter commenced the instant action in February 1976 seeking reimbursement in the amount of $137,300.50,[3] as authorized by Highway Law § 10 (33). Eighteen years later, in September 1994, plaintiff moved for summary judgment. Supreme Court granted the motion and defendant now appeals.

Plaintiff contends that the contract unambiguously provided that where there were conflicts between its specifications and those of defendant, its specifications were to control. In connection therewith, plaintiff submitted the affidavit of its supervisor of the arterial project, Albert Bauman, who was plaintiff's regional construction engineer from 1973 until 1989. Bauman averred that his specific duties included supervision over the measurement and computation of quantities of contract items utilized by contractors as well as the preparation of estimates for payment. Bauman claimed that defendant was fully aware that plaintiff's specifications would control in the case of any conflicts and, in support thereof, annexed a copy of the minutes of a meeting held in July 1970 which reflects that understanding, fully explained to defendant by an engineer with plaintiff, upon defendant's inquiry as to the meaning of a "special note" section contained in the parties' preliminary agreement.

Upon such showing, the evidentiary burden shifted to defendant (see, Zuckerman v City of New York, 49 NY2d 557, 560). Based upon, inter alia, our review of the affidavit of Roger Hohl, defendant's senior design technician who was involved in this dispute after the completion of the work, we find that defendant failed to sustain its burden. " '[A] clear, complete document * * * should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing' " (Struble v Chapman, 222 AD2d 856, quoting W.W.W. Assocs. v Giancontieri, 77 NY2d 157, 162). Neither defendant's allegation to the

_____

3. The difference between the actual increase in charges and the amount plaintiff sought in this action is not fully explained by this record.

contrary nor its insistence that the contract is ambiguous is enough to raise a triable issue of fact (*see, Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285, 290).

Addressing next defendant's contention that the deficiency claimed by plaintiff was proffered without sufficient substantiation detailing the costs, again we disagree. Plaintiff submitted the affidavit of Heiki Parts, its principal claims engineer, which detailed the reasons for the increased costs and included an itemized statement of the charges. Parts further explained, as corroborated by Bauman, that defendant had a full-time representative on the site who inspected and reviewed all of the work that was performed by Yonkers and who acted as a liaison between defendant and plaintiff regarding desired changes, modifications and revisions. According to Parts, such representative tracked the quantity of items used in connection with the work performed on defendant's behalf. Plaintiff further included selected pages of a deposition transcript of its former engineer in charge, Harry Sakalian, who testified that as the work was completed, measurements were taken and used to determine units of payments. Such amounts were then recorded on detailed computer-generated estimate sheets which were then sent to Albany for processing and payment. Sakalian thereafter explained, upon defendant's questioning, the way in which the final estimate was compiled.

In response thereto, defendant simply proffered unsubstantiated assertions, through both its attorney and by Hohl, without any supporting proof, that there still remains no evidentiary proof to support the claimed deficit. Mindful that "mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman v City of New York*, 49 NY2d 557, 562, *supra*) to defeat a summary judgment motion and that Highway Law § 10 (33) dictates that "the expense of such removal, relocation, replacement or reconstruction shall be borne entirely by the utility corporation" (Highway Law § 10 [33]), we affirm the grant of summary judgment, finding that plaintiff has appropriately proved an adequate basis for the deficit claimed (*see generally, Oneonta Dress Co. v Ozona-USA*, 120 AD2d 899, 901).

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.